**FLUOR CONSTRUCTORS,
INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents.**

No. 87–4029.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1988.

Decided Nov. 16, 1988.

Carl B. Carruth (argued) McNair Law Firm, P.A., Columbia, S.C., for petitioner.

Ray H. Darling, Jr., Executive Secretary, OSHRC, Daniel J. Mick, Office of the Solicitor, U.S. Dept. of Labor, Barbara Werthmann (argued), Washington, D.C., for respondents.

Before KENNEDY, KRUPANSKY and BOGGS, Circuit Judges.

KENNEDY, Circuit Judge.

Fluor Constructors, Inc. petitions for review of a final order of the Occupational Safety and Health Review Commission (the Commission) finding Fluor in violation of an Occupational Safety and Health Administration (OSHA) construction standard, 29 C.F.R. § 1926.451($l$)(4) (1987), for failure to require that an employee using a boatswain's chair scaffold be protected by a lifeline. In its petition Fluor argues that the Commission's interpretation of the standard is contrary to the express terms of the standard and constitutes a denial of Due Process because that interpretation gives insufficient notice of the types of conduct prohibited under the regulation. Fluor also disputes the standard's applicability to the facts of this case and the existence of substantial evidence to support the violation. We find that the Commission's interpretation is reasonable and does not violate Due Process. Furthermore, substantial evidence supports the Commission's version of the facts underlying the violation. Accordingly, we affirm the Commission's order in all respects.

Fluor was the prime contractor working on a steam plant project near Paducah, Kentucky. On September 2, 1986, Gary Roberts, an ironworker employed by Fluor on the Paducah site, fell to his death while working on the skeletal steel structure of a boiler building. Roberts' work involved the use of a boatswain's chair which the regulations define as "[a] seat supported by slings attached to a suspended rope, designed to accommodate one workman in a sitting position." 29 C.F.R. § 1926.452(b)(2) (1987).

On the date of the accident Fluor had assigned Roberts and a co-worker, Joel Davis, the job of "changing out" bolts in a steel structure at a location approximately 59 feet above the concrete floor below.[1] Roberts and Davis were to replace bolts located in reinforcing metal plates called "gussets" situated at the intersections of diagonal braces. These intersections and their gussets were located at intervals approximately ten feet above and below each horizontal beam on the structure. *See* Appendix A (taken from Brief for the Secretary at 6). Roberts performed the actual changing of the bolts while working from a boatswain's chair suspended from an overhead chain hoist. Davis assisted from the horizontal beam.

Roberts' method for protecting himself from the danger of falling involved use of at least one line six feet in length attached to a safety belt.[2] According to Davis' testimony at a hearing conducted before an Administrative Law Judge (ALJ), Roberts reached the gussets by moving up or down the diagonal braces from a starting point on a horizontal beam. Although attached to a chain hoist by a boatswain's chair capable of pulling him directly to the gussets, Roberts chose to connect his six foot line to the diagonal brace and then climb/walk up or down the brace to reach the gusset pulling the line with him. This method allowed Roberts to keep his line

---

1. "Changing out" describes the process whereby workers replace longer bolts temporarily used to connect pieces of steel with shorter permanent bolts required by design specifications.

2. Although the parties each advance a different version of the method used by Roberts, the dispute is immaterial because both methods would constitute a violation of the regulations if the Commission's interpretation of the regulations is correct.

attached to the diagonal brace. It was only upon reaching the gusset, according to Davis, that Roberts was totally suspended from the boatswain's chair and chain hoist arrangement. After finishing the bolt replacement, Roberts returned to the horizontal beam the way he had come—moving along the diagonal brace and pulling his attaching line.

Roberts' arrangement unfortunately did not provide continuous fall protection. Because the diagonal braces to which Roberts' six foot line was attached stopped at the level of each horizontal beam, Roberts was forced to disconnect this line from one diagonal brace, transfer it across the horizontal beam, and then reattach it to the next diagonal brace when he wished to move from one gusset to another. While standing or crouching on the horizontal beam during this transfer movement Roberts was without the protection of the six foot line and he would have to rely entirely upon his boatswain's chair's chain hoist for fall protection. Roberts' fall occurred when he was standing upon a horizontal beam after having disconnected both his six foot line and his boatswain's chair.

Following the accident OSHA conducted an accident investigation. As a result of the OSHA investigation, the Secretary of Labor (Secretary) cited Fluor for, *inter alia*, a serious violation of 29 C.F.R. § 1926.451(*l*)(4)[3] (a regulation promulgated under the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 651 *et seq.*) for allowing Roberts to work in a boatswain's chair without "a separate lifeline to which a safety belt and lanyard could be connected."[4]

Fluor contested the Secretary's citation. Pursuant to 29 U.S.C. § 659(c) a hearing was held before an ALJ of the Commission.

The ALJ affirmed the violation. After the Commission failed to direct discretionary review, the ALJ's Decision and Order became the final order of the Commission. *See* 29 C.F.R. § 2200.90(d) (1987). Fluor then petitioned under 29 U.S.C. § 660(a) for review in this court.

We review orders of the Commission under 29 U.S.C. § 660(a) and the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1982). *See, e.g., Dunlop v. Rockwell Int'l,* 540 F.2d 1283, 1287–88 (6th Cir. 1976). Section 660(a) mandates that we affirm the Commission's findings of fact if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). The APA mandates that when reviewing a Commission decision we may reverse it only if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Two principles guide the court's inquiry into the rationality/reasonableness of the Commission's decision. An administrative agency's interpretation of its own regulations is entitled to substantial deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Diebold, Inc. v. Marshall,* 585 F.2d 1327, 1332 (6th Cir.1978). An agency's interpretation of a regulation is valid, however, only if that interpretation complies with the actual language of the regulation. *North Georgia Bldg. & Constr. Trades Council v. Goldschmidt,* 621 F.2d 697, 710 (5th Cir.1980); *Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n,* 528 F.2d 645, 649 (5th Cir.1976). An agency is bound by the regulations it promulgates and may not attempt to circumvent the amendment process through changes in interpretation unsupported by the language of the regulation. *Cf. United States v. Nixon,* 418 U.S.

---

**3.** Section 1926.451(*l*)(4) provides in the pertinent part that employees using a boatswain's chair "shall be protected by a safety belt and lifeline in accordance with § 1926.104." *29 C.F. R.* § 1926.451(*l*)(4) (1987).

**4.** At oral argument the parties disagreed concerning the scope of the Secretary's citation. Fluor maintained that it was cited for a violation arising solely out of the circumstances surrounding Roberts' fall. The Secretary, on the other hand, argued that the citation was issued for a continuing violation arising out of the general practice on the Paducah project of using boatswain's chairs without independent lifelines. If the Commission's interpretation of the regulations is reasonable, once again, this dispute is immaterial because both the general practice of boatswain's chair usage and Roberts' individual use violated the lifeline requirement.

683, 695–96, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974) (regulation giving Special Prosecutor power to contest invocation of executive privilege binding until amended or revoked).

Fluor argues that the Commission's interpretation of the word "lifeline" in 29 C.F.R. § 1926.451(*l*)(4) is contrary to the express terms of the regulations and thus is "not in accordance with law." Fluor maintains that under the definitions of "lanyard" and "lifeline" in the regulations, a rope satisfying the definition of a "lanyard" can also qualify as a lifeline within the meaning of section 1926.451(*l*)(4) when tied off to a structural member.[5] Notwithstanding the different performance standards for lanyards and lifelines,[6] Fluor maintains that a line can qualify both as a lanyard and a lifeline if it meets the specification providing the greatest degree of safety. Fluor agrees that a long vertically hung independent line to which a lanyard may be attached is one form of a lifeline. Nor does Fluor dispute that a short line attached to a safety belt is a lanyard. Fluor does assert that the Commission's interpretation of lifeline to exclude Roberts' line is not supported by the wording of the regulation because as defined in the regulation a "lanyard" may also be a "lifeline" when it is used as Roberts used it in this case.

We hold that the Commission's interpretation of 29 C.F.R. § 1926.451(*l*)(4) is reasonable and in accordance with law. The ALJ properly noted the explicit distinctions between "lifeline" and "lanyard" in the regulations. The two types of lines have different minimum dimensions and different definitions. Unrebutted testimony at the hearing demonstrated the clear distinc-

tion drawn in the construction industry between lanyards and lifelines. Industrywide recognition of the complementary use of lifelines and lanyards is further demonstrated by Fluor's own practice of using lifeline and lanyard setups with boatswain's chair operations in other locations on the Paducah project.

 Although a semantic argument can be made that a lanyard when used in a certain fashion could satisfy the lifeline definition, consideration of the regulations as a whole dictates that Roberts' system would violate the regulations. Section 1926.451(*l*)(4) clearly requires the use of a "lifeline." As previously mentioned, common usage in the industry differentiates between lifeline and lanyard *regardless* of the possibility under the regulations that a "lanyard" could satisfy the requirements for a "lifeline." Simply because a plausible argument can be made that under certain circumstances a "lanyard" may satisfy the requirements for a "lifeline" does not render the Commission's construction of the regulations unreasonable or arbitrary. The Commission's construction need not be the *only* reasonable one before we will sustain it. *See Marshall v. Whirlpool Corp.*, 593 F.2d 715, 721 (6th Cir.1979), *aff'd*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980). Even if inartful drafting of the regulations lends itself to more than one possible construction, we nevertheless "find that a common sense consideration of the regulations with a view toward safety compensates for cloudy regulations," *Texas Eastern Products Pipeline Co. v. Occupational Safety & Health Review Comm'n*, 827 F.2d 46, 50 (7th Cir.1987), and accordingly defer to the Commission's interpreta-

---

**5.** The regulations define a "lanyard" as "a rope, suitable for supporting one person. One end is fastened to a safety belt or harness and the other end is secured to a substantial object or a safety line." 29 C.F.R. § 1926.107(b) (1987). The regulations define a "lifeline" as "a rope, suitable for supporting one person, to which a lanyard or safety belt (or harness) is attached." *Id.*, at § 1926.107(c).

**6.** The regulations state that "lifelines shall be secured above the point of operation to an anchorage or structural member capable of sup-

porting a minimum dead weight of 5,400 pounds.... [and except for those lifelines used in rock scaling operations shall be] a minimum of ¾-inch manila or equivalent, with a minimum breaking strength of 5,400 pounds." 29 C.F.R. § 1926.104(b), (c) (1987). Lanyards, on the other hand, must have "a minimum of ½-inch nylon, or equivalent, with a maximum length to provide for a fall of no greater than 6 feet. The rope shall have a nominal breaking strength of 5,400 pounds." *Id.*, at § 1926.104(d).

tion as a reasonable one. *See Diebold,* 585 F.2d at 1334.[7]

■ Furthermore, the Commission's interpretation of the regulation better serves the remedial purposes of the Occupational Safety and Health Act. The Commission's decision to distinguish between lanyards and lifelines ensures that employees will have continuous fall protection whereas Fluor's interpretation would sanction lanyard usage without continuous protection such as Roberts' use in the case at bar. While the plain meaning of the regulation's words should not be strained to alleviate a safety hazard, *see Diamond Roofing,* 528 F.2d at 650, we refuse to set aside a reasonable interpretation by the Commission which effectuates the Act's purpose of protecting the health of workers. *See Whirlpool Corp. v. Marshall,* 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980) ("safety legislation is to be liberally construed to effectuate the congressional purpose"); *Quality Stamping Prods. v. Occupational Safety & Health Review Comm'n,* 709 F.2d 1093, 1096 (6th Cir.1983).[8] Fluor's construction would permit the employee to be unprotected for significant periods while releasing and reattaching his short line. Nor would the line which would have to be slid up and/or down the diagonal brace always be attached to a point above the point of operation as a lifeline must be. *See* 29 C.F.R. § 1926.104(b) (1987).

■ Fluor next contends that the Commission's interpretation of the standard is so unclear that Fluor's citation issued pursuant to it violates Due Process because Fluor did not have adequate notice of its duties under the regulation. Notwithstanding the liberal interpretation to be given health and safety regulations, an employer is entitled to fair notice of prohibited conduct. "Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires...." *Diamond Roofing,* 528 F.2d at 649. Because section 1926.451(*l*)(4) is not a criminal provision and does not implicate First Amendment concerns, we consider it " 'in light of the conduct to which it is applied.' " *Ray Evers Welding Co. v. Occupational Safety & Health Review Comm'n,* 625 F.2d 726, 732 (6th Cir.1980) (quoting *United States v. National Dairy Corp.,* 372 U.S. 29, 36, 83 S.Ct. 594, 600, 9 L.Ed.2d 561 (1963)). In *Ray Evers, supra,* we adopted the standard that: " 'In determining whether an

7. Fluor contends that the lifeline requirement of section 1926.451(*l*)(4) does not apply to employees when they are not actually suspended in the boatswain's chair. Roberts was standing on a horizontal cross beam at the time of his fall. This argument has merit only if we accept Fluor's assertion that the lanyard tie-off used by Roberts is the equivalent of a lifeline. As noted above, we affirm the Commission's rejection of Fluor's argument and thus the violation of the lifeline requirement by Roberts was a *continuing* one. At *no point* did Roberts have an independent lifeline; it is irrelevant that Roberts was unconnected only while he was standing on the horizontal beam because his lanyard setup violated the regulation at *all* times.

Even assuming that the Commission was limited to determining whether a violation occurred only when Roberts was walking on the horizontal beam, we would nevertheless uphold the citation in this instance. The lifeline requirement would be substantially weakened if it were to apply only while the employee is actually *suspended* in the chair. To hold otherwise would be to negate the lifeline requirement for boatswain's chair scaffold usage at a time when the employee is most vulnerable—when he is getting into and out of the chair. To carry Fluor's argument to the extreme would allow the employee literally to leap from the horizontal beam to his chair without a lifeline as required in section 1926.451(*l*)(4) because that section would be inapplicable until the employee is in the chair.

8. Fluor also asserts that substantial evidence does not support the ALJ's finding that Fluor failed to provide Roberts with a lifeline in violation of section 1926.451(*l*)(4). Although no evidence was introduced that Roberts was ever untied while suspended in the boatswain's chair, this fact is irrelevant. Substantial evidence supports the ALJ's determination that Roberts was not tied off with an independent lifeline (rather than a lanyard) in violation of the regulation. Mr. Davis, the only eyewitness to the accident, testified that Roberts had not used a lifeline and instead had used either one or two six foot lanyards secured to diagonal braces. Davis' testimony that Roberts used only lanyards was unrebutted. At bottom, Fluor objects not to the lack of substantial evidence but to the Commission's interpretation of the regulation.

administrative regulation provides adequate notice, courts have inquired whether an employer familiar with the circumstances of the industry could reasonably be expected to have had adequate warning of the conduct required by the regulation.' " *Ray Evers*, 625 F.2d at 732 (quoting *National Indus. Constructors, Inc. v. Occupational Safety & Health Review Comm'n*, 583 F.2d 1048, 1054 (8th Cir. 1978)).

■■■ Applying this standard to the facts before us, we find that Fluor received sufficient notice of the lifeline requirement. Although no showing was made that Fluor received actual notice,[9] Fluor received "a fair and reasonable warning" as required by the Due Process clause. As mentioned previously, the common understanding in the construction industry is that lifelines and lanyards are different types of ropes altogether. An experienced contractor, using his common sense in light of industry practice, should know that use of a lanyard as a tie-off would not satisfy a requirement that a lifeline be used, given the accepted differences between lifeline and lanyard in the industry and in the definition section of the regulations. If in doubt as to the nature of the lifeline requirement Fluor should have taken the safer position and installed separate lifelines, *see Texas Eastern Prods.*, 827 F.2d at 50, or at least inquired of OSHA through its free on-site consultation program or made a written inquiry to clear up any uncertainties. *See*

id. *See also McGowan v. Maryland*, 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) (duty to inquire).

■■■ As a final matter, we reject Fluor's argument that if it was in violation of the standard the violation was *de minimis*. The Act established three levels of violations—serious, nonserious, and *de minimis*. A *de minimis* violation is one which has "no direct or immediate relationship to safety or health." 29 U.S.C. § 658(a) (1982). Fluor states in its reply brief that OSHA imposed the lifeline requirement for use of boatswain's chairs because the rope and pulley suspension system traditionally used to hoist the chairs could "free spool" if the employee let go of one end of the rope, thereby causing the chair and employee to fall. Because Fluor was using a chain hoist, which is a self-locking mechanism, instead of the rope and pulley, no free spool danger was present. According to Fluor, since no hazard was present the violation is *de minimis*. *See Donovan v. Daniel Const. Co.*, 692 F.2d 818, 820–21 (1st Cir.1982). We disagree. Although Fluor's use of chain hoists eliminated the danger of free spooling, fall hazards were still present from a multitude of *other* causes. Thus, the Commission was not required to find Fluor's violation *de minimis*.

For the foregoing reasons, the decision of the Occupational Safety and Health Review Commission is AFFIRMED.

---

**9.** We agree with Fluor that its past use of lifelines which complied with the OSHA requirement does not establish Fluor's knowledge that this was the *only* means by which it could satisfy the regulation.

## APPENDIX A

(For illustrative purposes only; not to scale)