872 F.2d 1026
 13 O.S.H. Cas.(BNA) 2121
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JOHN R. JURGENSEN COMPANY, Petitioner,
v.
The OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, Respondent.
 No. 88-3639.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1989.
 
 Before BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges, and JOHN W. POTTER, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Petitioner seeks review of an order of the Occupational Safety and Health Review Commission ("OSHRC" or "Commission") finding petitioner in violation of 29 C.F.R. Secs. 1926.652(b), 1926.652(e), and 1926.21(b)(2) (1988). Because substantial evidence supports all of the Commission's findings, we deny the petition for modification.
 
 I.
 
 2
 On May 14, 1987, employees of petitioner were excavating a trench along the side of a highway in order to install a sewer line. OSHA compliance officer Ralph Cannon inspected the site that day. Cannon measured the trench and discovered that it was 6 feet 6 inches deep and approximately 42 to 44 inches wide at the bottom and 55 inches wide at the top. The trench was being dug north to south, parallel to the highway, approximately four and one-half feet from the highway. The east wall of the trench was composed of "claylike" soil, and was "practically vertical." The west wall of the trench contained a telephone conduit running parallel to the trench. Below the conduit, the wall was composed of claylike material essentially the same as that found on the east wall. Above the conduit, there was approximately eight inches of sandy backfill material and a layer of asphalt roadwork. It is undisputed that the trench was not supported by any shoring, bracing, or sheeting, and that it was not sloped. There was, however, some evidence that the eight inches of backfill material atop the west wall of the trench was sloped.
 
 
 3
 As noted above, the trench was dug within four and one-half feet of the highway. The road was a four-lane highway with "fairly heavy" traffic. A dump truck was parked next to the east wall of the trench. At the time Cannon arrived at the site, two employees were working in the trench. Cannon conducted penetrometer tests to measure the soil's unconfined compressive strength. He tested five samples, each a little over six inches in size, and obtained the following readings:
 
 
 4
 Test No. Penetrometer Reading (tons per square foot) Pounds per square foot
-------------------------------------------------------------------------------
 1 1.5 3000
 2 .5 1000
 3 2.0 4000
 4 1.5 3000
 5 1.75 3500
 
 
 5
 Petitioner hired the engineering firm of Soil & Material Engineers to conduct similar tests on the soil in the trench. On May 15, 1987, Gene Castellari, a field technician with S & ME, took three samples directly from the east wall of the trench. He took these readings at three different depths:
 
 
 6
 Depth (Inches) Penetrometers Reading (tons per square Pounds per square foot
 foot)
-------------------------------------------------------------------------------
 16 2.5 5000
 32 4.0 8000
 44 4.5k 9000k
 
 
 7
 Ronald Ebelhar, an engineering department manager with S & ME, testified, based upon the readings taken by Castellari, that "the trench could remain open for a period of time, probably on the order of one day or about 24 hours." He further stated that if Cannon's penetrometer readings were utilized, the same conclusions would be operative. Petitioner's foreman on the site testified that they intended to keep the trench open for no more than two hours.
 
 
 8
 Cannon also testified that he interviewed the two employees who were working in the trench, and found that although they were aware that the greatest hazard of a trenching operation was cave-in, both admitted that "they had not received any specific training on the standard, specific sloping requirements, or how to install shoring." Petitioner's foreman testified that he conducted "tool box" safety meetings on a monthly basis. He further recalled receiving a memorandum entitled "6 Points--Safer Trenching." He indicated that the memorandum is "something that [he] would then bring up with the employees at the tool box meetings." However, he never stated that he had in fact raised it, or that the employees working in the trench on May 14, 1987 had received the information. The memorandum provides that "[i]n trenches five feet deep or more, the banks shall be shored, laid back to a stable slope, or held in place by means of a sewer box to protect employees who may be exposed to moving ground or cave-ins."
 
 
 9
 Based on his inspection, Cannon issued a citation to petitioner alleging, inter alia, violation of: (1) 29 C.F.R. Sec. 1926.652(b) because two employees were working in a trench which was "not protected by shoring, sheeting, bracing, sloping or shielding;" (2) 29 C.F.R. Sec. 1926.652(e) because the trench was "near 11452 Springfield Pike;" and (3) 29 C.F.R. Sec. 1926.21(b)(2) because the employees working in the trench "were not instructed in the requirements of 1926.650 through 1926.652 and tables P-1 and P-2."
 
 
 10
 Petitioner appealed the citations, and a hearing was conducted before an administrative law judge ("ALJ"). The ALJ held that Sec. 1926.652(b) required shoring, sheeting, bracing, sloping, or other support whenever a trench of more than five feet in depth was excavated in unstable or soft material. He further concluded that soil would be considered soft unless penetrometer readings revealed an unrefined compressive strength exceeding 8000 pounds per square foot. He rejected petitioner's argument that soil with unconfined compressive strength of 2000 to 8000 pounds per square foot was not soft and unstable soil. For this reason, he concluded that petitioner violated Sec. 1926.652(b). The ALJ also held that the eight inches of backfill material on the top of the west wall of the trench and the overhang of roadway material established a violation of Sec. 1926.652(e). Finally, the ALJ found that nothing in petitioner's foreman's testimony "establishes that he actually held a meeting with respondent's employees and conveyed the safety information contained within the [6 Points--Safer Trenching] memo." For this reason, the ALJ concluded that petitioner "did not instruct all of its employees at the site in the recognition and avoidance of unsafe conditions with respect to trenching procedures" in violation of Sec. 1926.21(b)(2).
 
 
 11
 Petitioner subsequently filed a petition for discretionary review with the Commission. No member of the Commission directed review of the ALJ's order within thirty days of the decision, so the decision of the ALJ became the final order of the Commission. 29 U.S.C.A. Sec. 661(i) (1985). Pursuant to 29 U.S.C.A. Sec. 660(a) (1985), petitioner now requests review and modification of the Commission's order.
 
 II.
 
 12
 This court's standard of review for decisions of the Commission has been summarized as follows:
 
 
 13
 "29 U.S.C. Sec. 660(a) requires that 'findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.' Substantial evidence was defined by this court ... as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Moreover, adjudicatory conclusions of the Commission can be set aside only when they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' "
 
 
 14
 National Engineering & Contracting Co. v. OSHRC, 838 F.2d 815, 817 (6th Cir.1987) (quoting Empire-Detroit Steel v. OSHRC, 579 F.2d 378, 383 (6th Cir.1978)).
 
 A.
 
 15
 Petitioner first argues that substantial evidence does not support the Commission's conclusion that petitioner violated 29 C.F.R. Sec. 1926.652(b) (1988). That subsection provides:
 
 
 16
 Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them.
 
 
 17
 Petitioner concedes that the trench in question was more than five feet in depth, and that it was not shored, sheeted, braced, sloped, or otherwise supported. Nevertheless, petitioner argues that it did not violate the regulation because the sides of the trench were not composed of "unstable or soft material." The use of the disjunctive "or," it is argued, requires separate inquiries into whether the material was "soft," and whether the material was "unstable." With respect to the softness of the material, petitioner argues that the Bureau of National Standards provides the relevant guidelines:
 
 
 18
 Clay Consistency Pounds per Square Foot
------------------------------------------------
 Very soft less than 500
 Soft 5001000
 Medium 10002000
 Stiff 20004000
 Very stiff 40008000
 Hard greater than 8000
 
 
 19
 Based on these guidelines, petitioner argues that four of the five penetrometer readings obtained by Cannon revealed soil that was "stiff," and the fifth reading revealed soil that was "medium." Thus, it is argued, there is no evidence in support of a finding that the soil was "soft." With respect to the stability component of Sec. 1926.652(b), petitioner argues that the uncontradicted testimony of Ronald Ebelhar that the trench would remain stable for twenty-four hours, when taken in conjunction with the uncontradicted testimony of petitioner's foreman that they intended to keep the trench open for at most two hours, precludes a finding of unstability. Thus, petitioner would conclude that the soil in the trench walls was neither "soft" nor "unstable."
 
 
 20
 The Commission responds that the definition of "soft" may be found in the inspection guidelines sent by the Commission to its field inspectors. Those guidelines provide that "[s]oils having less than 8000 psf [pounds per square foot] unconfined compressive strength shall be cited under 1926.652(b)." Thus, the real question at issue in this case is which guidelines provide the correct definition of "soft." The Secretary's promulgated regulations do not provide a definition of "soft" soil.
 
 
 21
 It is important to remember that "[a]n administrative agency's interpretation of its own regulations is entitled to substantial deference." Fluor Constructors v. OSHRC, 861 F.2d 936, 939 (6th Cir.1988) (citations omitted). However, the "agency's interpretation of a regulation is valid ... only if that interpretation complies with the actual language of the regulation. An agency is bound by the regulations it promulgates and may not attempt to circumvent the amendment process through changes in interpretation unsupported by the language of the regulation." Id. (citations omitted). Nevertheless, "[t]he Commission's construction need not be the only reasonable one before we will sustain it. Even if inartful drafting of the regulations lends itself to more than one possible construction, we nevertheless 'find a common sense consideration of the regulations with a view towards safety compensates for cloudy regulations....' " Id. at 940 (citations omitted) (emphasis in original).
 
 
 22
 Applying these considerations to the interpretation question presented here, we adopt the Commission's definition of "soft." The Commission's inspection guidelines treat soil as being either "hard" or "soft." By contrast, the Bureau of National Standards guidelines relied upon by petitioner offer many intermediate gradations. Examination of Sec. 1926.652 reveals that the regulation contemplates only soil that is "hard" or "soft." Subsection (b) sets forth the requirements for trenches with sides made of "soft material," while subsection (c) sets forth the requirements for trenches with sides made of "hard or compact soil." The regulations make no mention of such gradations as "medium," "stiff," or "very stiff." Thus, the Commission's interpretation of the regulation, at the very least, is a reasonable construction. This conclusion is buttressed by the fact that the Commission's interpretation better serves the purposes of the Occupational Safety & Health Act because it provides more protection to employees conducting trenching operations by requiring shoring and sloping at a greater level of unconfined compressive strength. See Fluor Constructors, 861 F.2d at 941. In sum, it cannot be said that the Commission's decision to apply its inspection guidelines is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. Sec. 706(2)(A) (1977). Therefore, the Commission's finding that petitioner violated Sec. 1926.652(b) is supported by substantial evidence, and must be upheld.[1]
 
 B.
 
 23
 Petitioner also appeals the Commission's finding that it violated 29 C.F.R. Sec. 1926.652(e) (1988). That subsection provides:
 
 
 24
 Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins when excavation or trenches are made in locations adjacent to backfilled excavations, or where excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source.
 
 
 25
 Petitioner argues that the Commission based its citation for violation of Sec. 1926.652(e) solely on the existence of eight inches of backfill material on top of the west wall of the trench. Petitioner contends that this does not establish a violation of Sec. 1926.652(e) because that section requires additional precautions only when the excavation is "adjacent to backfilled excavations," and the excavation here was not dug next to a backfilled excavation. Petitioner also argues that this subsection is not violated if it is shown that the presence of traffic and other machinery does not affect the trench's stability. Petitioner then points to the testimony of Ronald Ebelhar to the effect that the trench would remain stable for twenty-four hours.
 
 
 26
 Petitioner's arguments must be rejected because the regulation, on its face, requires shoring and bracing "where excavations are subjected to vibrations from ... highway traffic...." Here, the trench in question was dug within four and one-half feet of a major highway. The traffic on the highway was "fairly heavy." There was also a dump truck located adjacent to the east wall of the trench. Clearly, then, substantial evidence supports the Commission's finding that petitioner failed to take additional precautions by way of shoring and bracing where its excavation was subjected to vibrations from highway traffic and the operation of machinery, in violation of Sec. 1926.652(e).
 
 C.
 
 27
 Finally, petitioner objects to the Commission's finding that it violated Sec. 1926.21(b)(2) (1988). That subsection provides:
 
 
 28
 The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.
 
 
 29
 Petitioner argues that the Commission's reliance upon the conversation which field inspector Cannon had with petitioner's two employees working in the trench does not constitute substantial evidence that petitioner failed to meet the standard set forth in the regulation. In particular, petitioner points to Cannon's testimony on cross-examination that the employees did appear to know the hazards associated with trenching and the measures necessary to address this hazard--appropriate sloping and bracing. Petitioner argues that the Commission's real basis for the citation was the "boot-strap" argument that the employees could not have been properly instructed because "they were working in an unshored excavation."
 
 
 30
 The Commission responds by pointing to the testimony of Cannon stating that the employees had told him that "they had not received any specific training on the [trenching] standard, specific sloping requirements, or how to install shoring." The Commission further argues that petitioner's memorandum on trench safety was never distributed to employees working in the trenches, and "[n]othing in [the foreman's] testimony establishes that he actually held a meeting with [petitioner's] employees and conveyed the safety information contained within the memo."
 
 
 31
 The testimony of field inspector Cannon that the employees in question did not know the proper shoring and sloping techniques to reduce the hazard of cave-in in the trench, the fact that these employees were working in an unshored excavation, and the fact that petitioner failed to demonstrate that these employees had ever received the information contained in the trenching memo all constitute substantial evidence in support of the Commission's conclusion that petitioner failed to "instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury." 29 C.F.R. Sec. 1926.21(b)(2) (1988).
 
 III.
 
 32
 We hold that substantial evidence supports all of the Commission's findings; the petition for modification of the Commission's order is therefore DENIED.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Petitioner also argues that Cannon's methodology in obtaining samples for penetrometer testing was faulty. This argument is irrelevant because even if petitioner's expert's findings are utilized, two of the three readings obtained were below 8,000 pounds per square foot