TRINITY INDUSTRIES, INC.

v.

Elizabeth DOLE, Secretary of
Labor, et al.

Civ. A. No. 4–90–324–K.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 6, 1991.

Robert E. Rader, Jr., Angela Darby Dickerson, Locke, Purnell, Rain, Harrell, Dallas, Tex., for plaintiff.

Robert A. Fitz, U.S. Dept. of Labor, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

BELEW, District Judge.

Pending before the Court are Defendant's Motion for Judgment on the Pleadings or alternatively, for Summary Judgment, filed July 6, 1990, and Plaintiff's Motion for Summary Judgment, filed October 12, 1990. After careful consideration of the Motions, the parties' briefs and the applicable law, the Court is of the opinion that summary judgment should be entered in favor of the Plaintiffs for the reasons that follow.

## I. BACKGROUND

*The Statutory Scheme*

Section 6 of the Occupational Safety and Health ("OSH") Act, 29 U.S.C. § 655, directs the Secretary of Labor ("the Secretary") to adopt and promulgate safety and health standards for the workplace. Section 5 of the Act, 29 U.S.C. § 654, requires employers to comply with the Occupational Safety and Health standards promulgated by the Secretary. The Secretary enforces the Act by conducting workplace inspections and by reviewing various accident and exposure records which employers are required to maintain. If the inspectors discover violations during a workplace inspection, they issue citations and proposed penalties.

If the employer contests such citations, the Secretary advises the Occupational Safety and Health Review Commission, which then dockets the matter and assigns an administrative law judge to hear the case. If, at the hearing, the Secretary wishes to provide evidence of alleged violations other than the OSHA inspector's testimony, she may subpoena employee witnesses to appear and testify.

The legislative history of the OSH Act reflects Congress' desire to afford employees the opportunity to "appris[e] the inspector of all possible hazards to be found in the workplace, as well as to insure that employees generally will be informed of the inspector's presence and the purpose and manner of his inspection." S.Rep. No. 91–1282, 91st Cong., 2d Sess. at 11, *reprinted in* 1970 U.S.Code Cong. & Admin. News 5177, 5188 [hereinafter "Legislative History"].

In accordance with the Act, the Secretary of Labor has promulgated a *Field Operations Manual* for OSHA. The *Manual* provides that OSHA may conduct interviews of employees during the course of its investigations. It further provides that the interviews may be held in a private fashion, if the employee so desires.

### The Accident

On April 11, 1990, an industrial accident occurred at Trinity's Fort Worth, Texas plant, triggering an investigation by the Occupational Safety and Health Administration ("OSHA"). During the investigation, the OSHA Inspector, Gerald Forrester, requested to interview six employees who worked in the area where the accident occurred. All six employees are Hispanic and none speaks English. The employees agreed to be interviewed by Forrester, but specifically requested that Jose Vela, a bilingual supervisor at Trinity, act as interpreter. The employees also requested that Trinity plant manager Mike Rawlings attend the interviews since they all trusted Rawlings and desired his help in answering OSHA's questions.

OSHA Inspector Forrester interviewed three employees and obtained signed statements with the assistance of the interpreter, Jose Vela. The three remaining employees indicated that they were willing to speak with Forrester if Vela acted as interpreter and if Rawlings could attend. Instead of completing the interviews in this manner, however, OSHA issued administrative subpoenas to all six employees, which directed them to appear at OSHA's offices and give sworn statements before a court reporter. The interviews were to be conducted by Inspector Forrester and a bilingual OSHA employee, while neither Vela nor Rawlings would be allowed to attend.

## II. ANALYSIS

Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Furthermore, the non-moving party must rebut a properly supported motion for summary judgment with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978). That evidence must be such that a reasonable jury could reach a verdict favoring the non-moving party. *LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir.1989); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–12 (1986). Here, the uncontroverted evidence shows that there are no fact issues to be resolved by the Court. Hence, our only task is to apply the law to the given facts.

### A.

### Standing

 The threshold issue for determination is whether the Plaintiff, Trinity Industries, has standing to bring this action. In general, a plaintiff must prove three elements to establish standing: (1) an actual or threatened injury (2) that is fairly traceable to the defendant's improper conduct and (3) which is likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In addition, a party seeking review of a federal agency action pursuant to § 10 of the Administrative Procedure Act, 5 U.S.C. § 702, must fall within the "zone of interests to be protected or regulated by

the statute or constitutional guarantee in question." *Association of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *accord Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 394, 107 S.Ct. 750, 754, 93 L.Ed.2d 757 (1987). In applying these requirements, courts must be mindful of their underlying purpose: ensuring that claims are brought by the proper parties so that effective and diligent prosecution will result.

■ The Court finds that the Plaintiff has met each of these three initial requirements for standing. Regarding the first requirement, actual or threatened injury, Plaintiff argues from experience that it is often the case that if an employee's request to have a company representative present is denied and he is compelled to submit to a private interview, there is a strong likelihood that he will misunderstand and give mistaken answers in response to complicated and unnecessarily technical questions asked by the OSHA official. These mistaken answers, in turn, often form the basis for the issuance of invalid citations which Trinity must defend, thereby incurring unnecessary expenses.

While the financial expense incurred in defending these citations is, alone, sufficient to meet the "injury in fact" requirement, *Transportation Inst. v. Dole*, 841 F.2d 1132 (D.C.Cir.1987); *Evanston Ins. Co. v. Merin*, 598 F.Supp. 1290, 1302 (D.N. J.1984), Plaintiff has advanced other distinct arguments for injuries which it sustains by reason of the Defendant's conduct. Because OSHA must call company employees to testify during its case-in-chief, the company is harmed by the disruption of having those employees absent from work. Trinity is further harmed by having to take an adversarial posture against its employees at trial, since in defense of the citation the company must cross-examine its own employees, a process which may result in both impeachment and accusations of perjury. Finally, Trinity's harmonious relationship with its employees is disturbed by a lawsuit that generates animosity on the

part of employees who, wishing to avoid the entire process of testifying, often blame the company for the whole affair.

The second requirement is also satisfied, given that the direct cause of Trinity's alleged harms is the Defendant's conduct in issuing citations based upon ill-informed answers to misunderstood questions. The Court finds that the final requirement—that the alleged harm be capable of redress by the requested relief—is also satisfied here. Plaintiff seeks declaratory relief to clarify the employee's right to have his employer present during the interview, which it has shown through affidavits greatly lessens the likelihood of misunderstood questions and meritless citations.

The additional requirement imposed in this situation is that Trinity fall within the "zone of interests" protected by the OSH Act. As stated by the Supreme Court in *Clarke v. Securities Indus. Ass'n*, the plaintiff must demonstrate that the interest that he seeks to protect is "arguably within the zone of interests to be protected *or regulated* by the statute or constitutional guarantee in question." 479 U.S. at 396, 107 S.Ct. at 755 (emphasis added). The *Clarke* Court held that, where the plaintiff is not itself the subject of the contested regulatory action, the test denies standing only if

the Plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.

*Id.* at 399–400, 107 S.Ct. at 757. Here, Trinity's interests are regulated by the Occupational Safety and Health Act ("OSH" Act) and Trinity seeks a uniform interpretation and application of the Act. The company has important interests at stake in attending employee interviews and the Court believes that under the Supreme Court's standard in *Clarke*, Trinity's interests are not so marginally related to the purposes implicit in the statute as to deny

standing. We therefore hold that Trinity has standing to bring this action.

### B.

*The Administrative Procedure Act*

Trinity next argues that OSHA's policy and practice for more than sixteen years has been to permit employer representatives to attend interviews upon the employee's request, and that OSHA's failure to follow its own procedures is a violation of due process. Furthermore, OSHA may not informally change this policy, since it is required to go through formal notice and comment rulemaking for any changes that are substantive in nature. These formal rulemaking procedures are set forth in the Administrative Procedure Act, 5 U.S.C. 553, and approved in *Brown Express, Inc. v. United States*, 607 F.2d 695, 700 (5th Cir.1979).

Furthermore, the United States Supreme Court has held that an agency's violations of its own procedures may constitute a violation of due process. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir.1969). As one court put it:

> [I]t is elementary that an agency must adhere to its own rules and regulations. *Ad hoc* departures from those rules, even to achieve laudable aims, cannot be sanctioned, for therein lie the seeds of destruction of the orderliness and predictability which are the hallmarks of lawful administrative action. Simply stated, rules are rules, and fidelity to the rules which have been properly promulgated, consistent with applicable statutory requirements, is required of those to whom Congress has entrusted the regulatory missions of modern life.

*Reuters Ltd. v. FCC*, 781 F.2d 946, 950–51 (D.C.Cir.1986); *accord Fluor Constructors, Inc. v. Occupational Safety & Health Review Comm'n*, 861 F.2d 936 (6th Cir. 1988); *Shell Oil Co. v. FERC*, 664 F.2d 79 (5th Cir.1981).

The Administrative Procedure Act limits the manner in which the Secretary may adopt new rules. When a policy acts as a substantive rule and alters an existing regulatory scheme, the Secretary must adopt the new policy according to the procedures detailed in the APA. APA section 553 requires administrative agencies to provide the public with notice of proposed rules by publishing those rules in the Federal Register. 5 U.S.C. § 553(b). This section establishes the public's right to participate in the rulemaking process by requiring agencies to give the public an opportunity to consider and comment on proposed rules before they are adopted. *Id.* As the Supreme Court has stated, these provisions "were designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 764, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969).

Yet not all administrative rules are subject to the notice and comment rulemaking procedures. Section 553 exempts interpretative rules and applies only to substantive rules, those that *"effect a change in existing law or policy."* *Mount Diablo Hosp. Dist. v. Bowen*, 860 F.2d 951, 956 (9th Cir.1988) (emphasis in original); *accord Story v. Marsh*, 732 F.2d 1375 (8th Cir.1984) (holding that a substantive rule is one that affects individual rights and obligations). Nevertheless, the interpretive rule exception to APA rulemaking is to be narrowly construed and only reluctantly countenanced. *Reeder v. FCC*, 865 F.2d 1298 (D.C.Cir.1989).

The determination of whether a rule is interpretive or substantive is a question of law for the court to decide. *Westcott v. United States Dept. of Agriculture*, 611 F.Supp. 351, 357 (D.Neb.1984), *aff'd*, 765 F.2d 121 (8th Cir.1985). As explained by the Fifth Circuit Court of Appeals, a policy is covered by the APA if it has a "substantial impact on the regulated industry, or an important class of the members

or the products of that industry." *Brown Express*, 607 F.2d at 702.

Moreover, courts will look past labels given by the agencies to determine whether a given policy is substantive. The label an agency gives to a particular statement of policy is not dispositive. *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir.1977). Because OSHA's attempt to bar representatives from employee interviews changes rather than clarifies an existing policy, the Court finds that it is substantive in nature.

Here, the policy in question (allowing employer representatives to be present during interviews) is informal in nature and is not mandatory, but rather is merely an option for employees. Nevertheless, *Brown Express* holds that even informal customs are subject to the strictures of the APA. In *Brown Express*, the Interstate Commerce Commission attempted to change a long-standing practice without complying with the notice and comment procedures of the APA. Although the ICC characterized its practice as an "informal custom" and as an "informal, non-mandatory practice," the Court held that formal rulemaking was required:

> It is quite true that notification is not required under [49 U.S.C.] § 10928 and that the practice has never been formalized by a written requirement in the Field Staff Manual or by its adoption in a formal rule-making proceeding. It is equally true that the practice had existed for over forty years. * * * Indeed, even were the practice informal, it would still be possible that a change would have a substantial impact.

*Brown Express*, 607 F.2d at 702. OSHA's longstanding policy of allowing employer representatives to be present during interviews, though informal in nature, is a substantive policy and is therefore subject to the notice and comment provisions of the APA.

## C.

### *The Field Manual Provisions*

Trinity argues next that an employer representative should be permitted to attend the interview if the employee requests because the right to a private interview may be waived only by the employee. The Secretary argues, in contrast, that the OSHA Inspector, and not the employee, has the right to waive a private interview and allow an employer representative to be present.

Trinity asserts that OSHA's own *Field Operations Manual* provides that:

> [a]t the time of the interview *employees shall be asked* if they desire the interview to be in private. *Whenever an employee expresses a preference* that an interview be held in private, the CSHO shall make a reasonable effort to honor that request. (emphasis added)

From this, Trinity argues that it is the employee's prerogative to choose whether he wishes the interview to be held in private. To support its contrary position, the Secretary of Labor points to the text of the statute:

> In order to carry out the purposes of this Act, the Secretary [of Labor] ... is authorized to enter ... any factory ... where work is performed by an employee of an employer; and to inspect and investigate ... any such place of employment ... and to question privately ... any such ... employee.

Occupational Safety and Health Act [29 U.S.C. § 657(a)(2) ], § 8(a)(2).

Perhaps the greatest area of clash between Trinity and the Secretary is the legislative history of the Occupational Safety and Health Act. The Secretary argues that "[t]he legislative history of the Act *clearly* states that the interviews are **for the benefit of the Secretary of Labor.**" [1]

---

1. The statement found in the legislative history that the Secretary believes demonstrates that "the interviews are for the benefit of the Secretary of Labor" reads: "[T]he inspector should have an opportunity to question employees in private so that they will not be hesitant to point out hazardous conditions which they might otherwise be reluctant to discuss." S.Rep. No. 91–1282, 91st Cong., 2d Sess. at 11, *reprinted in* 1970 U.S.Code Cong. & Admin.News 5187, 5188. This statement in no way implies that the Act was intended to benefit the Secretary as op-

(emphasis added). In contrast, Trinity maintains in its brief that "the legislative history of the Act *clearly* reflects that the interviews were established primarily **for the benefit of employees.**" (emphasis added).

The Court believes that both parties are mistaken insofar as the legislative history does not *clearly* indicate an intent to protect one party over the other. Rather, the undeniable overreaching goal of the legislation is to promote the efficacy and accuracy of OSHA investigations. This goal is furthered by encouraging honesty and candidness from employees by allowing them, if they so desire, to be interviewed outside the presence of their employers.

This goal is, likewise, furthered by promoting accuracy in the fact-finding process. Therefore, so long as the employee understands the questions that are asked of him and can respond with an informed answer, this goal is achieved. Regrettably, the goal is defeated when employees are confused or misled by the questioning and the result is the issuance of invalid citations against which the company must then defend.

Although OSHA Inspector Forrester testified in his affidavit that, in his opinion, the presence of the employer at the interviews prohibited a free and open exchange of information, the fact remains that OSHA has, in the past, allowed company representatives to be present during interviews. Moreover, the Court is persuaded by the affidavit testimony of Trinity employees who testified that they often are confused by OSHA's questions and that their confusion and misunderstandings are relieved when a company representative is present.

The affidavits and other summary judgment proof have shown that the employees at Trinity are not intimidated by the presence of their employer during the interview, but often are intimidated by the method of interrogation used by OSHA inspectors. Therefore, we find that the right to waive a private interview is best left in the hands of the employee. This enables the employee to decide whether the interview should be conducted in private, where he can speak freely against his employer if necessary, or whether he wants a company representative to be present to minimize whatever confusion might be inherent in, or arise from, the questioning.

## III. CONCLUSION

The Plaintiff has established through proper summary judgment proof that there are no material facts in dispute and that it is entitled to judgment as a matter of law. In this case, the Court finds that a reasonable jury could not reach a verdict favoring the non-movant. Therefore, pursuant to Rule 56 of the Federal Rules of Procedure, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment. It is further ORDERED that Defendant's Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment is hereby DENIED.

IT IS SO ORDERED.

posed to the employees. It indicates only that one goal of the Act is to encourage truthfulness and full disclosure during interviews.