Tammi **LONGHI** and **L & H Associates,** Petitioners,

v.

**ANIMAL AND PLANT HEALTH IN-SPECTION SERVICE, United States Department of Agriculture, Respondent.**

No. 97–3897.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 17, 1998.

Decided Jan. 25, 1999.

**1058**

Nancy L. Kahn (argued and briefed), Foster, Swift, Collins & Smith, Farmington Hills, MI, for Tammi Longhi and L & H Associates.

Cathrine G. O'Sullivan, U.S. Dept. of Justice, Antitrust Division, Washington, DC, M. Bradley Flynn (argued and briefed), U.S. Dept. of Agriculture, Office of General Counsel, Washington, DC, Sharlene A. Deskins, U.S. Dept. of Agriculture, Office of Hearing Clerk, Washington, DC, for Animal & Plant Health Inspection Service.

Cathrine G. O'Sullivan, U.S. Dept. of Justice, Antitrust Division, Washington, DC, Sharlene A. Deskins, U.S. Dept. of Agriculture, Office of Hearing Clerk, Washington, DC, for U.S. Dept. of Agriculture.

Before: NELSON, MOORE, and CLAY, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

This matter comes before us on a petition for review of an Agriculture Department order denying an application for a Class "A" dealer's license under the Animal Welfare Act, 7 U.S.C. §§ 2131 *et seq.* Piercing the corporate veil of an existing Class "B" licensee, the agency denied the application on the ground that if the Class "A" license were granted there would be a violation of a regulatory prohibition against any "person" having more than one license.

We conclude that the challenged decision was not in accordance with law, no proper justification having been given for the veil-piercing exercise. The petition for review will therefore be granted.

### I

The existing licensee is a corporation known as Hodgins Kennels, Inc. This company, a Class "B" licensee under the definition set forth in 9 C.F.R. § 1.1, deals in stray dogs that are sold for use in medical research. The company operates a kennel on Lange Road in Howell, Michigan. Until early 1995 it also had a facility located on Judd Road in nearby Fowlerville, Michigan.

Ownership of the corporate stock of Hodgins Kennels, Inc., is divided between Janice Hodgins and her husband, Fred Hodgins. Petitioner Tammi Longhi, a longtime employee of Hodgins Kennels, is the daughter of Janice and Fred Hodgins.

In February of 1995, or thereabouts, Mrs. Longhi and her mother formed a Michigan partnership—petitioner L & H Associates— that applied for a Class "A" license under the Animal Welfare Act. (Class "A" licensees are not authorized to traffic in stray animals; their animals must be bred and raised on the

premises. See 9 C.F.R. § 1.1.) The partnership's license application gave a Lange Road mailing address, but it showed an address on Judd Road as the site where animals would be housed. The application listed both Mrs. Longhi and Mrs. Hodgins as partners in L & H Associates.

A second application—dated two days after the first—listed only Mrs. Longhi as an owner/partner of L & H Associates. The change was made at the suggestion of Dr. Joseph Walker, a veterinarian employed as a supervisor in the Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS").

Under cover of a letter dated March 27, 1995, Dr. Walker returned the second of the L & H license applications to Mrs. Longhi. Dr. Walker's letter, the content of which apparently reflected the advice of his superiors in Washington, said that "your facility should be designated a site of Hodgins Kennel, Inc. . . . ."

Mrs. Longhi, who wanted to start a business separate and apart from Hodgins Kennels, wrote Dr. Walker to request an explanation of the "specific legal basis" for the agency's refusal to accept the L & H application. Dr. Walker forwarded this request to headquarters, where it met an unknown fate.

In May of 1995 L & H Associates submitted a new Class "A" license application. The new application was substantially identical to its immediate predecessor, except that the mailing address of L & H Associates was now shown as Judd Road in Fowlerville rather than Lange Road in Howell.

No license was forthcoming, so Mrs. Longhi, writing on behalf of L & H Associates, sent Dr. Walker a letter requesting an administrative hearing. Dr. Walker then returned the May application and advised that the hearing request had been referred to the Department for scheduling.

The Department responded with a show cause order, issued by the Administrator of APHIS on July 28, 1995, directing Mrs. Longhi and L & H Associates to answer allega-

tions that they were ineligible to be licensed for reasons set forth in the order. Among the reasons stated were these: (1) that Mesdames Longhi and Hodgins had violated 9 C.F.R. § 2.4 by verbally abusing and harassing APHIS personnel during one or more Hodgins Kennels inspections,[1] and (2) that "[t]he issuance of a license to the respondents would violate 9 C.F.R. § 2.1(c)." Section 2.1(c) provides that "[n]o person shall have more than one license."

The petitioners filed timely answers denying the APHIS allegations, and hearings were then conducted before an administrative law judge. (The licensing hearing was consolidated with a hearing on an APHIS disciplinary proceeding against Hodgins Kennels. A separate petition for review is pending before this court in connection with the latter proceeding.)

In June of 1996 the ALJ issued an initial decision and order in the licensing matter. Although the ALJ found that neither Mrs. Longhi nor Mrs. Hodgins had been guilty of harassing or abusing any APHIS official, the ALJ accepted the argument that § 2.1(c) of the regulations precluded issuance of a license to L & H Associates. The ALJ's legal conclusion was expressed in these terms:

"Respondents Tammi Longhi and L & H Associates are not eligible to receive a license under section 2.1(c) of the Regulations (9 C.F.R. § 2.1(c)) because one of the partners in L & H Associates is Janice Hodgins, who already had a license through her ownership of Hodgins Kennel."

As permitted under the applicable procedural regulations, the ALJ's decision was appealed to the Judicial Officer of the Department of Agriculture. (Pursuant to authority delegated by the Secretary of Agriculture, the Judicial Officer has the last word for the Department in adjudicatory proceedings of this type.) After accepting briefs from both sides, but having denied a request by the petitioners for oral argument; the

---

1. Section 2.4, captioned "Non-interference with APHIS officials," says that "[a] licensee or applicant for an initial license shall not interfere with, threaten, abuse (including verbally abuse), or harass any APHIS official in the course of carrying out his or her duties."

Judicial Officer issued his final decision and order on July 11, 1997.

Upholding the ALJ's conclusion of law, the Judicial Officer rejected an argument by the petitioners that Hodgins Kennels, Inc., and L & H Associates are separate "persons" under the agency's own regulations. The petitioners' interpretation of the regulations, the Judicial Officer observed, "would allow an individual to own and control multiple legal entities licensed under the Animal Welfare Act, thus rendering section 2.1(c) of the Regulations (9 C.F.R. § 2.1(c)) a nullity."

The Judicial Officer did not find that the principals of Hodgins Kennels, Inc., were utilizing the corporate form to perpetuate fraud or subvert justice. Neither did he find any failure to comply with the technicalities of Michigan corporation law. The Judicial Officer seems to have acted, rather, on the understanding that a shareholder in a closely held corporation is necessarily an *alter ego* of the corporation.

This unusual understanding of the law is reflected in the following passage of the Judicial Officer's decision:

> "APHIS denied L & H Associates' application for a license because Janice Hodgins is the owner of and a principal in Hodgins Kennel, Inc. (a Class B licensee), and a partner in L & H Associates. As such, Janice Hodgins is an *alter ego* of both Hodgins Kennel, Inc., and L & H Associates; therefore, if Hodgins Kennel, Inc., and L & H Associates each held a license under the Animal Welfare Act, Janice Hodgins would hold two Animal Welfare Act licenses in violation of section 2.1(c) of the Regulations (9 C.F.R. § 2.1(c))."

The next paragraph of the decision contains a reminder "that an agency's interpretation of its own regulations must be given controlling weight unless the interpretation is plainly erroneous...." In their brief to this court, the petitioners suggest that the interpretation reflected in the Judicial Officer's decision is indeed plainly erroneous. We agree that it is.

## II

As noted above, 9 C.F.R. § 2.1(c) prohibits any "person" from having more than one license. This prohibition is found in Subchapter A of Title 9 of the Code of Federal Regulations, the Agriculture Department's *vade mecum* of regulatory provisions relating to animal welfare.

Part 1 of Subchapter A, 9 C.F.R. § 1.1, sets forth definitions for many of the terms used in the subchapter. "For the purposes of this subchapter," § 1.1 begins, "unless the context otherwise requires, the following terms *shall* have the meanings assigned to them in this section." (Emphasis supplied.)

The definitions are very detailed. *"Dog,"* to take a random example, "means any live or dead dog (*Canis familiaris*) or any dog-hybrid cross," while *"Dwarf hamster,"* the next term defined in § 1.1, "means any species of hamster such as the Chinese and Armenian species whose adult body size is substantially less than that attained by the Syrian or Golden species of hamsters." The drafters of the regulations obviously strove diligently—and, it seems to us, successfully—to achieve a high level of precision and to avoid ambiguity.

The meaning that § 1.1 assigns to the term "person" manifests the same care and attention to detail exhibited in the rest of the definition section. *"Person,"* according to § 1.1, "means any individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity." [2] Except where the context otherwise requires, therefore, we have it on the authority of the regulations themselves that just as an individual is a "person" within the meaning of Subchapter A, so also a partnership is a "person," a corporation is a "person," and any other legal entity is a "person." The context in which the term "person" is used in § 2.1(c) certainly does not require that the term be assigned some other meaning. That being so, what 9 C.F.R. § 2.1(c) says, in the plainest of English, is that none of the enti-

---

2. When used in the statute itself, similarly, "[t]he term 'person' includes any individual, partnership, firm, joint stock company, corporation, association, trust, estate, or other legal entity." 7 U.S.C. § 2132(a).

ties named—no individual, no partnership, no corporation, etc.—shall have more than one license.

■ The Judicial Officer, as we have seen, had the idea that an individual who is both a shareholder in a licensee organized as a corporation and a partner in a licensee organized as a partnership must *ipso facto* be a dual licensee. This notion flies directly in the teeth of the traditional corporate law concept—a concept faithfully reflected in the statute and the regulations—that a corporation is a legal person in its own right, separate and distinct from the person or persons holding stock in the corporation. See *Burnet v. Clark*, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397 (1932) ("A corporation and its stockholders are generally to be treated as separate entities").

■ There are circumstances, to be sure, under which the corporate veil may be pierced. The question whether such circumstances have been shown to exist in a particular case is to be determined by state law. See *United States v. Cordova Chemical Co. of Michigan*, 113 F.3d 572, 580 (6th Cir.1997) (*en banc*), *vacated on other grounds*, *United States v. Bestfoods*, —— U.S. ——, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). The state law applicable in the case at bar is that of Michigan, and "Michigan appears to follow the general rule that requires demonstration of patent abuse of the corporate form in order to pierce the corporate veil." *Id.* Cf. *Bestfoods*, 118 S.Ct. at 1885 ("the corporate veil may be pierced ... when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf").

In the instant case neither the ALJ nor the Judicial Officer suggested that the corporate form had been misused to accomplish fraud or some other wrongful purpose. Any such suggestion would have been misguided, for the administrative record simply does not show that the corporate form has been abused here.

The principle that seems to have informed the decisions of the ALJ and the Judicial Officer was one not of law, but of policy: "If

an individual has two dealer licenses," the Department tells us, "one under her own name and another as a principal in a legal entity such as a partnership, that person could easily evade and frustrate APHIS' enforcement efforts [by moving animals from one facility to another]." The policy underlying 9 C.F.R. § 2.1(c) would be ill-served, the Judicial Officer suggested, if individuals were not prohibited from owning and controlling "multiple legal entities licensed under the Animal Welfare Act...."

But if the Department of Agriculture thinks it would be sound policy to prohibit individuals from owning and controlling multiple entities licensed under the Animal Welfare Act, there is a right way to effect the prohibition and a wrong way. The wrong way would be to adopt the prohibition as an "agency litigating position" wholly unsupported by the text of the existing regulations. See *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The right way would be to amend the regulations—and to do so through a rulemaking proceeding conducted in accordance with the requirements of the Administrative Procedure Act.

If it wished to do so, obviously, the Department could issue a notice of proposed rulemaking advising the public that it was thinking about amending its regulations to say (for example) that an individual who is a corporate shareholder will be deemed an *alter ego* of the corporation if she holds a controlling interest, or some specified percentage, in the company. The Department could propose a change in the regulations, similarly, to say that just as no person shall have more than one license, no person shall exercise control over more than one legal entity that has a license. Under the scheme adopted by Congress, the publication of such a notice in the Federal Register would be followed first by an opportunity for public comment, and then—if the agency still thought the amendment desirable—by publication of a Federal Register notice announcing adoption of the change. See 5 U.S.C. § 553.

The Department of Agriculture has taken none of these steps under the Administrative Procedure Act. Unless and until it does so, the Department is obviously bound by its existing regulations. See *Fluor Construc-*

*tors, Inc. v. Occupational Safety and Health Review Comm'n,* 861 F.2d 936, 939 (6th Cir. 1988) ("An agency is bound by the regulations it promulgates and may not attempt to circumvent the amendment process through changes in interpretation unsupported by the language of the regulation").

The reason assigned by the Department for refusing to grant a Class "A" license to L & H Associates was "inconsistent with the plain language of the [existing] regulation[s]. . . ." See *Garcia v. Secretary of Health and Human Services,* 46 F.3d 552, 557 (6th Cir.1995). The refusal to grant a license must therefore be held unlawful and set aside under 5 U.S.C. § 706(2)(A) (the court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .").

The petition for review is **GRANTED,** and the Department's conclusion that L & H Associates is not eligible to receive a license under 9 C.F.R. § 2.1(c) is **SET ASIDE** as unlawful.