Charles A. RIES, III

v.

NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak

National Railroad Passenger Corporation, Appellant.

No. 91–1495.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1992.

Decided March 31, 1992.

Rehearing and Rehearing In Banc Denied April 27, 1992.

William G. Ballaine (argued), Mark S. Landman, William A. Edelson, Siff, Rosen & Parker, P.C., New York City, for appellant.

Joseph Smukler (argued), Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for appellee.

Jonathan Altman, Philadelphia, Pa., for amicus curiae Ass'n of American Railroads.

Before: COWEN, NYGAARD and GARTH, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from a suit by Charles Ries against the National Railroad Passenger Corporation (Amtrak) for damages resulting from an injury to his ankle. This case involves a modest amount of money, but an important issue of law. Specifically, we are asked to consider whether a violation of an Occupational Safety and Health Act (OSHA) regulation establishes negligence per se and bars consideration of an employee's contributory negligence under the Federal Employers' Liability Act (FELA). Amtrak appeals from an adverse judgment in the district court. We will reverse.

### I.

On July 2, 1989, Charles Ries severely injured his right ankle at home, requiring an emergency trip to the hospital. He was discharged on crutches that same day for this non-work-related injury. Ries was employed as a machinist for Amtrak, and he reported to work on July 6, 1989 at Amtrak's main service building, which is adjacent to the 30th Street Station in Philadelphia. On the morning of July 6, Ries was descending a seven-step concrete stairway from a loading platform to the ground at the service building, when he slipped on the bottom step,[1] which was six inches off the ground, and turned his foot on a stone. The metal slip-resistant tread on the bottom step of the stairway was missing, the metal nosing had been chipped away, and the remaining concrete was deteriorated and rounded off three inches. In the course of his fall, Ries injured his right ankle—the same ankle he had hurt four days earlier at home.

A subsequent x-ray revealed no break and an air cast was applied to his right ankle. The doctor who treated Ries later testified that, in his opinion, the ankle injury was "an aggravation of a *preexisting* calcaneal fracture." App. at 161 (emphasis added). Ries also suffered minor injuries to his right shoulder and lower back. He was unable to return to work until June 6, 1990, eleven months after the injury. Ries' injuries required fourteen visits to the doctor and thirty-five physical therapy treatments between July 1989 and January 1991.

Ries brought suit in federal district court under the FELA, 45 U.S.C. §§ 51–60 (1988). As evidence of Amtrak's negligence, he introduced over Amtrak's objection an administrative regulation promulgated under OSHA, 29 U.S.C. §§ 651–78 (1988). The regulation in existence at the time of Ries' fall provided the following specifications for fixed industrial stairs:

> Stair treads. [T]read and the top landing of a stairway, where risers are used, should have a nose which extends one-half inch to 1 inch beyond the face of the lower riser. Noses should have an even leading edge. All treads shall be reason-

---

1. There was evidence that Ries had used the stairway two or three times a week for several years and that the bottom step had been in a deteriorated condition for more than year.

ably slip-resistant and the nosings shall be of non-slip finish.

29 C.F.R. § 1910.24(f) (1990). No witness testified about the OSHA regulation, nor was there any evidence that Amtrak had been cited administratively for violating the regulation. However, the district court charged the jury that if this OSHA regulation was violated, Amtrak would be liable under the FELA, even if the violation of the regulation was only slightly responsible for Ries' injury. In other words, Amtrak's violation of the OSHA regulation would constitute negligence per se under the FELA. The district court also instructed the jury that Ries' contributory negligence would not bar a full recovery of damages if the regulation was violated.

The jury returned a verdict in favor of Ries for $37,130. Although the jury found Ries to be seventy-five percent responsible for injury and Amtrak only twenty-five percent responsible, Amtrak was required to pay not merely its share of the damages ($9,282.50) but the entire amount of the verdict, since the jury found that Amtrak had violated the OSHA regulation pertaining to stair treads. Amtrak appeals to this court under 28 U.S.C. § 1291 (1988).

## II.

■■■ Amtrak does not dispute its violation of the OSHA regulation pertaining to stair treads, nor does it dispute the admission of the OSHA violation as evidence of its negligence. Rather, Amtrak contests the district court's instructions that an employer's violation of an OSHA regulation constitutes negligence per se and bars contributory negligence under the FELA. To resolve this issue, we must first examine the scope of the FELA and OSHA, respectively. Then we will examine the interaction of the two statutes. Because this appeal involves the construction of federal statutes, our review is plenary. *Dawson v. United States*, 894 F.2d 70, 72 (3d Cir. 1990).

### A.

The Federal Employers' Liability Act was enacted in 1908 [2] to address the growing number of work-related injuries in the railroad industry, which even today is one of the most dangerous industries in this country. Jerry J. Phillips, *An Evaluation of the Federal Employers' Liability Act,* 25 San Diego L.Rev. 49, 50–52 (1988). The FELA, like other industrial safety statutes, was an attempt to require the railroad industry to bear the costs for the inevitable deaths and injuries of employees which comprised the "human overhead" of business. *Kernan v. American Dredging Co.,* 355 U.S. 426, 431, 78 S.Ct. 394, 397, 2 L.Ed.2d 382 (1958). *See also Wilkerson v. McCarthy,* 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497 (1949) (Douglas, J., concurring) ("The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operations."). Congress intended to establish a dependable tort remedy for railroad workers which would not only compensate them for their injuries but also encourage safety within the industry. Phillips, *supra,* at 50–51. In enacting the FELA, "Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers." *Kernan,* 355 U.S. at 432, 78 S.Ct. at 398. *See also Rogers v. Consolidated Rail Corp.,* 948 F.2d 858, 862 (2d Cir.1991); *Lewy v. Southern Pacific Transp. Co.,* 799 F.2d 1281, 1287–88 (9th Cir.1986); *Green v. River Terminal Ry. Co.,* 763 F.2d 805, 806 (6th Cir. 1985) (all suggesting liberal construction of the FELA in order to facilitate recovery).

Liability under the FELA is predicated on the negligence of the employer. Under traditional principles of tort law, "[t]he unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself," or in more common

**2.** The FELA was enacted originally in 1906 but was struck down as unconstitutional by the Su- preme Court in *Howard v. Illinois Cent. R.R.,* 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297 (1908).

usage, negligence per se.[3] Restatement (Second) of Torts, § 288B(1) (1965). As to the FELA, the Supreme Court has modified recovery by finding negligence per se if the statutory violation "contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan*, 355 U.S. at 433, 78 S.Ct. at 398. If a statutory duty is violated by the employer, the employee will recover all of her damages under the FELA even though the employee is contributorily negligent:

> [N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of *any statute enacted for the safety of employees* contributed to the injury or death of such employee.

45 U.S.C. § 53 (emphasis added). The issue in this case, then, is whether an OSHA regulation is the type of safety statute whose violation would trigger the provisions of the FELA.

■ It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry. *See, e.g., Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969) (Safety Appliance Act); *Urie v. Thompson*, 337 U.S. 163, 188–89, 69 S.Ct. 1018, 1034–35, 93 L.Ed. 1282 (1949) (Safety Appliance Act and Boiler Inspection Act); *Seaboard Air Line Ry. Co. v. Horton*, 233 U.S. 492, 503, 34 S.Ct. 635, 639, 58 L.Ed. 1062 (1914) (Safety Appliance Act and Hours of Service Act). What is less clear is whether the FELA applies when a general workplace safety statute such as OSHA is violated.

The outer bounds of FELA liability were examined by the Supreme Court in *Kernan*. In that case, a seaman was killed when his tug caught fire as a result of a kerosene lamp igniting inflammable vapors above the water. The lamp violated a Coast Guard regulation requiring that lamps be more than eight feet above the water. The issue was whether that violation could lead to negligence per se under the Jones Act, "which in terms incorporates the provisions of the FELA." *Kernan*, 355 U.S. at 431, 78 S.Ct. at 397. Answering the question in the affirmative, the Court concluded that the FELA was not meant to apply to only the Safety Appliance and Boiler Inspection Acts:

> [T]he theory of the FELA is that where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues. And this result follows whether the fault is a violation of a statutory duty or the more general duty of acting with care.

*Id.* at 438–39, 78 S.Ct. at 401–02.

This court's previous decisions have broadly construed other provisions of the FELA. We recently noted that "[r]ecompense for industrial injuries such as those suffered by plaintiff here should not have to depend on the vagaries of a statute such as the Safety Appliance Act or FELA." *Reed v. Philadelphia Bethlehem & New England R.R. Co.*, 939 F.2d 128, 132 (3d Cir.1991). However, we have not hesitated to reject claims of injured railroad employees when their claims were not clearly within the scope of the FELA. *See Felton v. Southeastern Pennsylvania Transp. Auth.*, 952 F.2d 59, 66 (3d Cir.1991) (urban subway is not interstate common carrier under the FELA); *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421, 426 (3d Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991) (work-related stress did not constitute injury under the FELA); *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360–61 (3d Cir.1986)

---

**3.** Other courts have used the terms "negligence per se" and "absolute liability" interchangeably. Although the two concepts are similar, we will use "negligence per se" in this opinion, since the FELA is a negligence statute. *See Kernan*, 355 U.S. at 451–52, 78 S.Ct. at 406–07 (Harlan, J., dissenting) ("Congress has not legislated in terms of absolute liability. 'The basis of liability under the Act is and remains negligence.'") (citation omitted). *But see Carter v. Atlanta & St. A.B.R. Co.*, 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949) (negligence per se is "a confusing label for what is simply a violation of an absolute duty").

(FELA's statute of limitations bars suit even though plaintiff suffered continuing exposure to diesel fumes after discovery of illness).

On its face, the FELA does not appear to preclude the derivation of a statutory duty of care from OSHA, since OSHA seems to be a "statute enacted for the safety of employees." However, even if the FELA could be construed this broadly, that would be only one side of the equation. We must also examine whether OSHA's applicability to the FELA is limited by the express language of OSHA.

### B.

■ The Occupational Safety and Health Act was enacted in 1970 in response to an alarming epidemic of industrial injuries and deaths. *Occupational Safety and Health Law* 32–33 (Stephen A. Bokat and Horace A. Thompson III, eds., 1988). Like other safety statutes, OSHA is to be construed broadly in favor of ensuring workplace safety. *See Century Steel Erectors, Inc. v. Dole,* 888 F.2d 1399, 1403 (D.C.Cir.1989); *Fluor Constructors, Inc. v. Occupational Safety and Health Review Comm'n,* 861 F.2d 936, 941 (6th Cir.1988); *ITT Grinnell Corp. v. Donovan,* 744 F.2d 344, 349 (3d Cir.1984) (all suggesting liberal construction of OSHA). Although OSHA covers a wide range of workplace injuries, it was not meant to be an all-encompassing statute. *See Industrial Union Dept., AFL– CIO v. American Petroleum Inst.,* 448 U.S. 607, 641, 100 S.Ct. 2844, 2863, 65 L.Ed.2d 1010 (1980) ("[OSHA] was not designed to require employers to provide absolutely risk-free workplaces...."); *Titanium Metals Corp. v. Usery,* 579 F.2d 536, 543 (9th Cir.1978) ("OSHA was never designed, nor could it have been, to eliminate all occupational accidents."); *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113, 1118 (10th Cir.1977) ("[OSHA] does not hold the employer responsible for the prevention of all accidents."). Specifically, Congress provided the following limitation to the statute's reach:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or *to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees* under any law with respect to injuries, diseases, or death of employees arising out of, or in the course, of employment.

29 U.S.C. § 653(b)(4) (emphasis added). We must decide whether imposing negligence per se under the FELA for an OSHA violation would "enlarge or diminish or affect in any other manner" the liability of a railroad employer.

The Senate report analyzing section 653(b)(4) of OSHA essentially restates that provision and gives little additional guidance as to Congressional intent:

This subsection provides that the act shall not be deemed to *affect* workmen's compensation laws or common law or statutory rights, duties or liabilities of employers and employees under any law relating to injuries, diseases or death, stemming from the course of employment.

S.Rep. No. 91–1282, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 5177, 5203 (emphasis added). The only other piece of legislative history pertaining to section 653(b)(4) is a letter from then-Solicitor of Labor (now D.C. Circuit judge) Laurence H. Silberman to the Chairman of the House Subcommittee on Labor:

Dear Mr. Chairman: This is in response to your recent request for information upon which to base a reply to Mr. James E. Bailey, Legislative Counsel, American Society of Insurance Management, Inc.

In his letter, Mr. Bailey expresses concern that under proposed legislation dealing with occupational health and safety "an injured employee could claim violation of the requirements of the legislation and thus bypass the applicable state workmen's compensation benefits through an action in the Federal courts."

The provisions of S. 2788, the Administration's proposed Occupational Safety and Health Act of 1969 would in *no way*

*affect the present status of the law with regard to workmen's compensation legislation or private tort actions.*

Hearings on H.R. 843, H.R. 3809, H.R. 4294 and H.R. 13373 before Select Subcomm. on Education and Labor, 91st Cong., 1st Sess., Pt. 2, at 1592–93 (emphasis added) (*quoted in Pratico v. Portland Terminal Co.*, 783 F.2d 255, 266 (1st Cir.1985)). Some courts which have interpreted the scope of OSHA have viewed the Silberman letter as being dispositive of Congressional intent. We disagree.

The Court of Appeals for the First Circuit has interpreted the Silberman letter as indicating that the *only purpose* of the "enlarge or diminish or affect" language of section 653(b)(4) was to ensure that OSHA did not create a private cause of action which would bypass workers' compensation. *Pratico*, 783 F.2d at 266. In *Pratico*, a railroad employee was injured as the result of a defective jack used to lift a railroad car. The plaintiff in *Pratico*, like Ries, alleged that an OSHA regulation was violated and the violation constituted negligence per se under the FELA.

The court held that OSHA does not expand employers' liability since it merely defines an existing duty without actually creating a new duty:

> Allowing OSHA regulations to act as "guides for the determination of standards of care," should not be viewed as expanding the liability of employers. The doctrine of negligence per se does not have the effect of turning reasonable, nontortious behavior into unreasonable, tortious behavior. Rather it simply allows the presence of a statutory regulation to serve as irrefutable evidence that particular conduct is unreasonable.

*Id.* at 265 (citation omitted). Faced with the restrictive language of section 653(b)(4) which would appear to limit OSHA's reach, the First Circuit looked to the Silberman letter in arriving at the following interpretation of section 653(b)(4):

> Our review of the legislative history of OSHA suggests that it is highly unlikely that Congress considered the interaction

of OSHA regulations with other common law and statutory schemes other than worker's compensation. [Section 653(b)(4)] is satisfactorily explained as intended to protect worker's compensation acts from competition by a new private right of action and to keep OSHA regulations from having any effect on the operation of the worker's compensation scheme itself.

*Id.* at 266. Thus, *Pratico* allowed an OSHA violation to constitute negligence per se and bar contributory negligence under the FELA. *Id.* at 266–68.

We find the analysis of *Pratico* to be unpersuasive, since we cannot agree that the only intended effect of section 653(b)(4) was to preclude the creation of a private right of action which would bypass workers' compensation. The First Circuit's analysis defies traditional principles of statutory interpretation which dictate that courts first look at the statute's language and the plain meaning of that language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "[O]nly the most extraordinary showing of contrary intentions from [legislative history] would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). *See also Immigration and Naturalization Serv. v. Elias–Zacarias*, —— U.S. ——, ——, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) ("In construing statutes, 'we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.' ") (citation omitted); *GTE Sylvania*, 447 U.S. at 108, 100 S.Ct. at 2056 ("Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Furthermore, the Supreme Court has counseled against giving too much weight to "the contemporaneous remarks of a single legislator who sponsors a bill," *id.* at 118, 100 S.Ct. at 2061, much less a non-legislator such as the

Solicitor of Labor.[4]

Section 653(b)(4) clearly states that OSHA shall not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees." If a violation of an OSHA regulation could constitute negligence per se and bar contributory negligence under the FELA, it would be almost axiomatic that the effect would be to "enlarge or diminish or affect" the statutory duty or liability of the employer. Even if we agreed with Ries' argument that imposing negligence per se for an OSHA violation would not "enlarge" employers' liability, since it merely defines an existing duty, we are hard pressed to say that it would not "affect" liability. Furthermore, a bar of contributory negligence which transforms Amtrak's loss from a $9,282.50 verdict to a $37,130 verdict clearly would "affect," if not "enlarge," the employer's liability. In short, it defies reason to construe section 653(b)(4) as only precluding private actions which would bypass workers' compensation. Had Congress intended such a result, it would not have drafted section 653(b)(4) in such sweeping terms.

Assuming arguendo that the Silberman letter has some significance, a better interpretation of section 653(b)(4) is that the "enlarge, diminish or affect" language precludes, *among other things,* the creation of a private cause of action which would bypass workers' compensation. The Silberman letter dealt solely with workers' compensation because that was the only concern which was raised at the time of OSHA's passage. The fact that the letter mentions just one instance in which OSHA would not apply, namely workers' compensation, does not necessarily mean that

OSHA would apply in every other instance. Another plausible interpretation is that the Silberman letter was only construing the clause preceding the "enlarge or diminish or affect" clause, in which it is stated that "[n]othing in this chapter shall be construed to supersede or in any manner affect any workman's compensation law." In any event, we respectfully disagree with the holding of the First Circuit in *Pratico.*

## C.

After examining the scope of OSHA and the FELA respectively, it is clear to this court that Congress did not intend for a violation of an OSHA regulation to result in negligence per se and bar contributory negligence under the FELA. Such a violation would only be evidence which could be considered by a jury in trying to determine whether an employer acted negligently.[5] *See* Restatement (Second) of Torts, § 288B(2) (1965).

Ries relies on *Eckert v. Aliquippa & Southern R.R. Co.*, 828 F.2d 183 (3d Cir. 1987), in which he contends this court cited *Pratico* with approval. *Id.* at 187. *Eckert* involved the narrow issue of whether a violation of the Safety Appliance Act and the regulations promulgated thereunder could preclude contributory negligence under the FELA. As discussed above, the Supreme Court has long held that the Safety Appliance Act is a safety statute under the FELA. Our holding in *Eckert* did nothing more than affirm that well-settled conclusion. *Id.* at 187. The validity of *Eckert* depended in no way on *Pratico,* and our reliance on *Pratico* was, at most, misplaced.

4. The significance of the Silberman letter is also questionable, since it was not included in the official published version of OSHA's legislative history. *See Senate Subcomm. on Labor, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970* (Comm. Print 1970).

5. The admission of an OSHA violation as evidence of negligence would not contradict our interpretation of the "enlarge or diminish or affect" language of OSHA. *See* Restatement

(Second) of Torts, § 288B, comment on subsect. (2) ("More frequently than in the case of statutes or ordinances, the requirements of administrative regulations are not adopted by the court as defining a definite standard of conduct in negligence actions, but are accepted as affording relevant evidence."). Evidence of an OSHA violation, in and of itself, does not "affect" liability; it is the inferences that the trier of fact draws from the evidence that "affect" liability.

Although no court of appeals other than the First Circuit has squarely addressed the issue of whether a violation of an OSHA regulation constitutes negligence per se under the FELA, our position is. supported by decisions of the Courts of Appeals for the Fourth and Sixth Circuits. *Albrecht v. Baltimore v. Ohio R. Co.*, 808 F.2d 329, 332–33 (4th Cir.1987) (OSHA violation did not constitute negligence per se);[6] *Minichello v. U.S. Industries, Inc.*, 756 F.2d 26, 29 (6th Cir.1985) (in product liability cases, "OSHA regulations can never provide a basis for liability because Congress has specified that they should not"). *See also Bachini v. Burlington Northern R.R. Co.*, No. CV–87–248–GF, 1990 WL 359076 (D.Mont., March 7, 1990); *Bertholf v. Burlington Northern R.R.*, 402 F.Supp. 171, 173 (E.D.Wash.1975); *Hebel v. Conrail*, 475 N.E.2d 652 (Ind.1985); *Wendland v. Ridgefield Constr. Services, Inc.*, 184 Conn. 173, 439 A.2d 954 (1981) (all finding OSHA violation not to be negligence per se under the FELA).

Even if OSHA were not limited by the express language of section 653(b)(4), we would be reluctant to construe OSHA as a safety statute under the FELA, since we question whether general workplace regulations can create a statutory duty of care under the FELA.[7] *See Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989) ("[T]he FELA was never intended to hold an employer absolutely liable for workplace injuries."); *McKenna v. Washington Metro. Area Transit Auth.*, 829

F.2d 186, 188 (D.C.Cir.1987) ("FELA … is a tort remedy statute, not a safety statute."). Despite the expansive language of *Kernan*, the Supreme Court has *never* extended the statutory duty of care of a railroad employer beyond a few safety statutes specific to the railroad industry, and we are reluctant to imply such an extension in the absence of express guidance from the Court. Ries argues that *Kernan* allows a finding of negligence per se for a violation of a statute other than the Safety Appliance and Boiler Inspection Acts. Although this is technically correct, *Kernan* was a maritime case, not a railroad case. It involved the imposition of a statutory duty of care established by a maritime regulation (a Coast Guard regulation) in a suit arising under a maritime statute (the Jones Act). The Court necessarily looked beyond the Safety Appliance and Boiler Inspection Acts, since those statutes established safety requirements for train appliances and boilers and were meaningless in the maritime context. Similarly, the Coast Guard regulations in *Kernan* which prescribed the height of ship lights above the water have no relevance to this case or any other case involving the railroad industry.

Despite the liberal construction of the FELA by the Supreme Court, we take note of the Court's reluctance to extend the FELA in other areas. *See, e.g., Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) (no prejudgment interest in FELA suits);

---

**6.** The conclusion of *Albrecht* is probably dicta, since the employer in that case merely challenged the admission of the OSHA regulation as evidence of negligence. 808 F.2d at 331. The Fourth Circuit *sua sponte* raised the issue of negligence per se.

**7.** We disagree with the concurrence's assertion that under our interpretation of the FELA, "common law would provide a more liberal standard of recovery than FELA." Concurrence at 1166. In a common law "slip and fall" case, negligence per se is not automatically imposed for a violation of a safety statute. Negligence per se is only applicable when the plaintiff and the injury are in the class of persons and risks encompassed by the statute which is violated. *W. Page Keeton et al., Prosser and Keeton on the Law of Torts* § 36, at 224–27 (5th ed. 1984).

The FELA provides a more liberal standard of recovery than the common law, because a court can find negligence per se "without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan*, 355 U.S. at 433, 78 S.Ct. at 398.

We also disagree with the concurrence's statements that "[a]bsolute liability may ensue upon a finding of *any* statutory violation" and that negligence per se merely "ups the ante" for defendants. Concurrence at 1166–1167. Imposing negligence per se for all statutory violations would be quite draconian, and we doubt that Congress intended to punish railroad employers so severely when it enacted the FELA. However, we leave open the possibility that Congress might someday enact a general workplace safety statute with the unequivocal intent that the statute apply to railroad employers.

*Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974) (employee of motor carrier which was agent of railroad not covered by FELA); *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969) (railroad has contributory negligence defense in suit by nonemployee); *Ward v. Atlantic Coast Line R.R. Co.*, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960) (per curiam) (company which repaired tracks for railroad was not agent of railroad under FELA); *Pennsylvania R.R. Co. v. O'Rourke*, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953) (brakeman injured while aboard car float on navigable waters not covered by FELA); *Chesapeake & Ohio Ry. Co. v. Stapleton*, 279 U.S. 587, 49 S.Ct. 442, 73 L.Ed. 861 (1929) (violation of state child labor law is not negligence under the FELA). Likewise, the extension of employer liability which Ries would have us adopt exceeds the bounds of the FELA.

Moreover, the *Pratico* view that "new safety statutes such as OSHA should be given the same treatment as well-established statutes" is incorrect. 783 F.2d at 264. Railroad safety statutes such as the Safety Appliance and Boiler Inspection Acts do not occupy the same position *vis-a-vis* the FELA as does OSHA. Indeed, the Supreme Court has held that these two railroad safety statutes "are substantively if not in form *amendments* to the Federal Employers' Liability Act." *Urie*, 337 U.S. at 189, 69 S.Ct. at 1034 (emphasis added). The same cannot be said about OSHA. Furthermore, the Safety Appliance, Boiler Inspection and Hours of Service Acts are all phrased in terms of "it shall be unlawful," which is the usual phrasing of a statute establishing negligence per se. 45 U.S.C. §§ 1, 2, 4, 11 (Safety Appliance Act); 45 U.S.C. § 23 (Boiler Inspection Act); 45 U.S.C. §§ 62(a), 63a(a) (Hours of Service Act). OSHA lacks this important wording.

Congress has established an elaborate system of administrative civil and criminal penalties for punishing OSHA violations in 29 U.S.C. § 666. *See Occupational Safety & Health Law, supra,* at 288–328. Indeed, the purpose of OSHA is preventive rather than compensatory. *B & B Insulation,*

*Inc. v. Occupational Safety & Health Review Comm'n,* 583 F.2d 1364, 1370–71 (5th Cir.1978). Thus, several courts of appeals, including this one, have held that OSHA does not create a private cause of action against an employer for a violation. *See Melerine,* 659 F.2d 706, 709; *United Steelworkers of America v. Marshall,* 647 F.2d 1189, 1235–36 (D.C.Cir.1980), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3148, 3149, 69 L.Ed.2d 997 (1981); *Dravo Corp. v. Occupational Safety & Health Review Comm'n,* 613 F.2d 1227, 1230 n. 2 (3d Cir. 1980); *Jeter v. St. Regis Paper Co.,* 507 F.2d 973, 976–77 (5th Cir.1975); *Byrd v. Fieldcrest Mills, Inc.,* 496 F.2d 1323 (4th Cir.1974) (per curiam); *Russell v. Bartley,* 494 F.2d 334, 336 (6th Cir.1974). For this court to allow an OSHA violation to serve as the basis for a negligence per se suit under the FELA would create an implied private cause of action, and thus upset the Congressional scheme for enforcing workplace safety through administrative penalties. We cannot say that the legislatively created sanctions for OSHA violations are insufficient and require judicial supplementation nor can we say that any "useful purpose related to Congressional policy goals would be served by tacking on yet another enforcement vehicle." *Otto v. Specialties, Inc.,* 386 F.Supp. 1240, 1243 (N.D.Miss.1974).

Finally, we note that the Federal Railroad Administration has delegated jurisdiction to the Occupational Safety and Health Administration for safety pertaining to "railroad yards, shops and associated offices ... with respect to conditions not rooted in nor so closely related to railroad operations." 43 Fed.Reg. 10,587 (1978). However, the fact that OSHA has jurisdiction in this area does not necessarily lead to a finding of negligence per se. As we have stated, a violation of an OSHA regulation could be admitted as evidence of negligence. The violation could even serve as the basis for administrative penalties against Amtrak. However, allowing the OSHA violation to constitute negligence per se and bar contributory negligence in a

FELA suit would be contrary to both the FELA and OSHA.

### III.

 We hold that OSHA is not a safety statute under the FELA, thus a violation of an OSHA regulation could not constitute negligence per se and bar contributory negligence. Therefore, we will reverse the judgment of the district court. However, the violation of the OSHA regulation was properly admissible as evidence of Amtrak's negligence, thus a retrial would not be necessary. Since the jury's verdict sheet specified the allocation of liability between Ries and Amtrak, we will remand to the district court with instructions to enter a new judgment in favor of Ries in the amount of $9,282.50.

NYGAARD, Circuit Judge, concurring.

I agree with the result reached by the majority, and with its reasoning to the extent that the plain meaning of OSHA, 29 U.S.C. § 653(b)(4), precludes a finding of negligence per se and a barring of contributory negligence in a FELA action. But the majority reaches two unnecessary conclusions: it contracts the scope of FELA liability by limiting the applicability of the negligence per se doctrine to violations of statutes "specific to the railroad industry"; and, it expands the scope of OSHA to allow OSHA standards to be admitted as evidence of negligence in a FELA action. Because I believe these results are unwarranted under current law and under the plain meaning of OSHA, I write separately.

### I.

FELA creates a cause of action for railway employees who have been killed or injured "by reason of any defect or insufficiency, due to [ ] negligence." 45 U.S.C. § 51. Liability is based on common law negligence principles. *Chesapeake & Ohio Ry. Co. v. Stapleton*, 279 U.S. 587, 591, 49 S.Ct. 442, 443, 73 L.Ed. 861 (1929). The employer's duties arise either from the general, common law duty of care or a specific, statutory duty. When they arise from statute, common law principles may treat the violation of that duty as negli-

gence per se. See Restatement (Second) of Torts, § 286 (1965). Negligence per se in a FELA action simply means that the violation of a statutory duty imposes absolute liability on the employer and he is not excused by any showing of care. *O'Donnell v. Elgin, Joliet & E. Co.*, 338 U.S. 384, 391, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949).

In *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), Kernan was killed because American Dredging violated a navigation regulation. The Supreme Court held that the violation constituted negligence per se under FELA § 51. Traditionally, common law limited the negligence per se doctrine to injuries that the statute was designed to prevent. See Restatement § 286, Comment on Clause (c). The Court, however, rejected this and concluded "the basis of liability is a violation of statutory duty without regard to whether the injury flowing from the violation was the injury the statute sought to guard against." 78 S.Ct. at 401.

Congress promulgated FELA to provide liberal recovery for injured workers. Hence, if restrictive common law principles undermine this purpose they are not applied. See *id.* at 398. See also 45 U.S.C. §§ 53, 54 (limiting the doctrines of assumption of the risk and contributory negligence). Because FELA is a broad remedial statute, *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 508–10, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493 (1957), its statutory scheme ensures that a common carrier's duties include, and *extend,* the spectrum of common law standard of recovery. In this context, the majority seeks to limit the applicability of the negligence per se doctrine to FELA liability to violations of statutes specific to the industry.

The majority assumes that, in deciding whether or not to apply the negligence per se doctrine, the nature of the act is a determinative factor. Nothing in FELA mandates this consideration. To the contrary, Congress intended FELA to interact with statutes not specific to the railroad industry. So for example, FELA § 53 and § 54 provide respectively that contributory

negligence and assumption of the risk shall not apply where the employer violated *"any statute* enacted for the safety of employees." [1] (Emphasis added.) Also, the Supreme Court has said that "the nature of the Acts violated is not a controlling consideration." *Kernan,* 78 S.Ct. at 401. What is controlling is the violation of a statutory obligation and a causally connected injury. *Id.* at 398. The basis for the majority's limitation cannot be found in FELA or *Kernan.*

The fallacy of its reasoning is apparent when we consider an odd result it produces. Suppose an employee is injured because an employer violates a statute designed for safety but not directed at the industry (for example, OSHA). In a common law action, if the employee can show that his injury was one the statute was designed to prevent, then negligence per se will apply. Yet in a FELA action, he does not enjoy the same because the statute was not "specific to the railroad industry." The majority thus construes FELA in a manner that common law would provide a more liberal standard of recovery for violations of statutory duties than FELA. But see *id.* at 401 (equity considerations have moved courts to "plainly reject[ ] many of the refined distinctions necessary in common-law tort doctrine"); 45 U.S.C. §§ 53, 54.

Though the majority does not articulate so much as it assumes, the only rationale for the limitation it places seems to be based on the belief that FELA protects against certain types of "injuries" and ensures a certain type of "safety." See Majority at 1163–1164. Therefore the ordinary "slip and fall" cases cannot be considered in the same class as those resulting from violations of industry directed statutes. The majority implies that FELA stands in a special relationship with certain statutes such as the Safety Appliance Act, 45 U.S.C. §§ 1 et seq., and the Boiler Inspection Act, 45 U.S.C. §§ 23 et seq., the violations of which lead to negligence per

se. See *Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949).

In *Kernan* the employer argued similarly. It contended that these statutes stand in a special relationship with FELA by virtue of FELA § 54, which refers to "any statute enacted for the safety of employees." Thus, only violations of these statutes, it contended, impose negligence per se. The Court rejected this argument:

First, § [54] relates entirely to the defense of assumption of risk, abolishing this defense where the injury was caused by the employer's negligence or by "violation ... of any statute enacted for the safety of employees...." It is § [51] of the FELA which creates the cause of action and this section, on its face, is barren of any suggestion that injuries caused by violation of *any* statute are to be treated specially....

Second, it is argued that the Safety Appliance and Boiler Inspection Acts are special safety statutes and thus may easily be assimilated to the FELA under general common-law principles. *But there is no magic in the word "safety."*
...

78 S.Ct. at 400 (first emphasis in original and second emphasis added). Likewise there is no magic in the word "injury." Under the majority's reasoning, an employee may establish negligence per se if she broke her ankle because her employer violated the Safety Appliance Act, but she may not so establish if she broke the same ankle because her employer violated a statute not directed at the industry but designed for employee safety.

Whether to apply the negligence per se doctrine is not confined by some notion that FELA protects against certain types of "injuries" and ensures a certain type of "safety." Liability springs from a breach of a duty:

[T]he theory of the FELA is that where the employers' conduct falls short of the

---

**1.** I note that OSHA is not specific to the railway industry, but was promulgated "to assure ... safe and healthful working conditions." 29 U.S.C. § 651(b). Absent the prohibitory lan-

guage of OSHA § 653(b)(4), OSHA would interact with FELA and affect employer duties and liabilities.

high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues. And this result follows whether the fault is a violation of a statutory duty or the more general duty of acting with care, for the employer owes the employee, as much as the duty of acting with care, the duty of complying with his statutory obligations.

*Id.* at 398. By its nature liability based on a breach of a general, common law duty cannot be negligence per se since the trier of fact must first determine what the standard of conduct, duty, is. The violation of a statutory duty stands on a different ground; the statute defines the duty. Absolute liability *may* ensue upon a finding of *any* statutory violation.

In *Pratico v. Portland Terminal Co.,* 783 F.2d 255 (1st Cir.1985), the Court of Appeals for the First Circuit concluded, "*FELA* presents no obstacle to the application of the negligence per se doctrine to OSHA violations." *Id.* at 264 (see Part III at pp. 262–64) (emphasis added). I agree.[2] By applying negligence per se, we do not drastically enlarge liability. Without it, the trier of fact may still find liability. Negligence per se simply "ups the ante" whenever legislatures have spelled out specific, statutory obligations.

The majority suggests, "Imposing negligence per se for all statutory violations would be quite draconian." Majority at 1163 n. 7. But harsh too is the inevitable consumption of lives, limbs, and livelihoods by the railway industry. See *Wilkerson v. McCarthy,* 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497 (1949) (Douglas concurring). These human costs do not distinguish between the nature of statutory violations. Employment in the railway industry remains perilous; we expect employers to maintain the highest standard of care. This includes observing statutory standards of care specific to the industry as well as other statutory obligations with equal diligence.

I do not suggest that every violation of a statutory duty gives rise to negligence per

se under FELA. The logical reach of such a proposition may lead to absurd results. I suggest only that the majority's suggested bright-line demarcation is unnecessary to decide this appeal and is unwarranted under current law:

Congress saw fit to enact a statute of the most general terms, thus leaving in large measure to the courts the duty of fashioning remedies for injured employees in a manner analogous to the development of tort remedies at common law. But it is clear that the general congressional intent was to provide liberal recovery for injured workers, and it is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers.

*Kernan,* 78 S.Ct. at 398 (citations omitted). The development of FELA, like common law principles, should proceed on a case by case, statute by statute basis to reflect changing conditions and values. The majority did not need to restrict FELA liability in the manner that it did for the plain language of OSHA § 653(b)(4) precludes a finding of negligence per se in a FELA action. *Albrecht v. Baltimore & Ohio R.R. Co.,* 808 F.2d 329, 333 (4th Cir.1987) ("negligence per se rule is inconsistent with [OSHA] § 653(b)(4)"). In overjustifying what is statutorily clear, the majority may have unnecessarily limited the scope of FELA liability and its potential for future development. Thus I divorce myself from any suggestion that the applicability of the negligence per se doctrine is limited to violations of statutes specific to the industry.

## II.

I also disagree with the majority's assertion that OSHA violations may be admitted into evidence to show that an employer acted negligently. OSHA § 653(b)(4) precludes such use of OSHA in a FELA action. It provides that OSHA shall not "in any manner *affect* any … common law or stat-

---

**2.** But I think *OSHA* precludes the application of this doctrine and disagree with the *Pratico*

court's interpretation of OSHA § 653(b)(4). *Id.* at 264–68 (see Parts IV and V).

utory rights, *duties*, or liabilities." (Emphasis added.) The majority relies on the plain meaning of § 653(b)(4) to conclude: Even if "imposing negligence per se for an OSHA violation would not 'enlarge' employers' liability ... we are hard pressed to say that [such a result] would not 'affect' liability." Majority at 1162. The plain meaning rule of statutory construction, once applied, cannot be abandoned when it is convenient to do so. See *Public Citizen v. Department of Justice*, 491 U.S. 440, 469, 109 S.Ct. 2558, 2574, 105 L.Ed.2d 377 (1989) (Kennedy concurring). The same reasoning should preclude the introduction of OSHA standards as evidence.

It is axiomatic that all evidence of negligence is designed to affect the liability calculus and a defendant's duty to plaintiff. See Restatement § 288, Comment on subsection (2). If such introduction results in a finding of negligence, it changes the standard of employer liability. If, however, it would not affect the negligence calculus, why would one even seek to introduce it in the first place? Indeed, the only reason why is to show a breach of an OSHA duty and thereby imply a common law duty and breach. See *id.* ("The fact that such [statutory] precautions have been prescribed for another purpose may be a relevant fact for the consideration of the triers of fact, as indicating that a reasonable man would have taken the same precautions in the particular case."). To the extent the introduction of statutory standards affects the inferences drawn by the trier, see Majority at 1162 n. 5, it affects duties and liabilities.

This contradicts not only the plain meaning of OSHA § 653(b)(4) but also OSHA's statutory purpose. Section 653(b)(4) makes clear that OSHA was not intended to redefine or affect an employer's common law or statutory duties. OSHA's overriding purpose is to prevent workplace injuries. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980) (OSHA "is prophylactic in nature."). It is enforceable by administrative civil and criminal penalties. It, however, does not provide remedies to injured employees. See *Dravo Corp. v. Occupational Safety & Health Review Comm'n.*, 613 F.2d 1227, 1230 n. 2 (3d Cir.1980) (OSHA does not create a private cause of action). See also *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 52 (1st Cir.1991) (OSHA does not preempt state tort laws). By affecting the duties that give rise to liability under other laws, the majority construes OSHA to accomplish indirectly that which OSHA cannot do directly.

### III.

I believe that the breach of any statutory duty may impose negligence per se under FELA absent an intrinsic, prohibitory provision, but that OSHA § 653(b)(4) is such a provision and precludes a plaintiff from introducing evidence of OSHA violations in a FELA action. I join the result reached by the majority.