Roy ZIMMERMAN, Plaintiff–Appellee,

v.

LONG ISLAND RAILROAD,
Defendant–Appellant.

No. 00–7526.

United States Court of Appeals,
Second Circuit.

Feb. 2, 2001.

William J. Blumenschein, Jamaica, NY, for appellant.

Edward J. Yule, Northport, NY, for appellee.

Present McLAUGHLIN and SACK, Circuit Judges, CHATIGNY,* District Judge.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

The defendant-appellant, Long Island Railroad, appeals from a judgment of the district court (Viktor V. Pohorelsky, *Magistrate Judge*) denying its motion for a new trial pursuant to Fed.R.Civ.P. 59(a). We affirm.

On April 2, 1997, the plaintiff was ordered by the defendant to cut down a tree that was fouling a track a quarter of a mile from a crossing near the defendant's East Williston station. After the plaintiff removed the tree by himself with some difficulty, he proceeded along a right-of-way and, when his foot became entangled in brush near the track, tripped and injured his right knee. Unequipped with any communication device with which to call for help and unable to stand up, the plaintiff lay on the ground for an hour and a half, periodically lifting himself up to the tracks to make sure that no train was approaching. He was eventually rescued by an ambulance after a brakeman on a passing train noticed him and came to his aid.

The plaintiff filed suit under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, on April 15, 1998. During pretrial discovery, the plaintiff indicated his intent to rely on the defendant's violations of the Roadway Worker Protection Rule ("RWPR"), 49 C.F.R. § 214, as evidence of negligence. By notice of motion dated October 13, 1999, the defendant moved *in limine* to preclude the plaintiff from referring to or offering testimony about the RWPR. The court responded to this motion by ordering the plaintiff to identify and disclose by November 30, 1999 "each subpart of the Code of Federal Regulations regarding the Roadworker Protection Statute upon which the plaintiff will rely." Although the plaintiff complied with that order on November 24, the defendant now argues that the plaintiff's submission was calculated to obscure the issue and hinder its efforts to prepare for trial.

The defendant waited until January 28, 2000, just before jury selection began, to respond to the plaintiff's filing, hand delivering to the court a letter claiming that the plaintiff did not adequately comply with the order and indicating its intent to renew its motion. At the beginning of the trial, the court declined to rule on the motion on the ground that the defendant was too late in responding to the plaintiff's submission.

The trial, which lasted from January 31 to February 4, 2000, thus proceeded with the plaintiff making frequent reference to the RWPR and to the defendant's violations of those regulations, not only in his opening statement but also in the direct testimony of his key witnesses. Specifical-

---

* Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

ly, the plaintiff's witnesses testified that the defendant's employees were confused about the RWPR requirements, that the plaintiff should not have been sent out alone and without a communication device on the night of April 2, 1997, and that the Union representing the employees had made complaints about the implementation of the RWPR rules. The defendant argues that roughly 60% of plaintiff's key witnesses' testimony centered on the regulations; the plaintiff contends that that figure is an exaggeration but does not deny the important role of the RWPR in its theory of negligence.

On the fourth day of trial, February 3, 1999, the court ruled that the RWPR was inapplicable to the plaintiff's claims. Citing 49 C.F.R. § 214.301, the "Purpose and Scope" provision of the RWPR, the court noted that "the purpose of [the regulations] is to prevent accidents and casualties caused by moving railroad cars, locomotives or roadway maintenance machines striking roadway workers." It then observed that "[t]here's nothing in this case to indicate that this accident was in any way related to a moving railroad car, locomotive, or roadway maintenance machine striking anything" and therefore held that "these rules and regulations the Court finds inapplicable to this case." The court instructed the jury accordingly.

The jury returned a verdict in favor of the plaintiff in the amount of $212,000, and the defendant promptly moved for a new trial, claiming prejudice stemming from the jury's erroneous exposure to extensive testimony about the RWPR. Although acknowledging that the defendant's motion was a "close case," the court concluded that it was "unable to say that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice." The court therefore denied the defendant's motion.

■ The defendant appeals this ruling to us, arguing that the admission of RWPR testimony requires the grant of a new trial.

■ "[W]e will reverse a district court's decision to grant or deny a motion for a new trial only for an abuse of discretion." *Song v. Ives Labs.*, 957 F.2d 1041, 1047 (2d Cir.1992).

■ "A new trial is warranted only where the introduction of inadmissible evidence is a clear abuse of discretion, and where that abuse of discretion is prejudicial to the ultimate result of the trial. We will refuse to grant a new trial unless we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Pescatore v. Pan Am. World Airways*, 97 F.3d 1, 16 (2d Cir.1996). We conclude not only that the jury's decision in this case was not seriously erroneous or a miscarriage of justice, but also that the testimony presented by the plaintiff about the RWPR was properly admitted by the district court during trial and should have been considered by the jury. Because we therefore cannot say that the introduction of this evidence was an abuse of discretion, we must affirm the denial of the defendant's motion for a new trial.

■ The plaintiff's claim was brought under FELA and alleged that the defendant failed to provide him a safe workplace. This FELA claim is governed "by the common law principles as established and applied in the federal courts." *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (citation omitted). "What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Id.*

As a matter of federal common law, courts have specifically incorporated the doctrine of negligence *per se* into FELA claims. *See Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1159 (3d Cir. 1992). In *Morant v. Long Island Railroad*, 66 F.3d 518, 523 (2d Cir.1995), we held that "[i]t is well-settled that the FELA requires a finding of negligence *per se* when there has been a violation of a safety statute specifically aimed at the railroad industry." (quoting *Ries*, 960 F.2d at 1159). Moreover, the Supreme Court has defined the contours of that federal common-law doctrine more broadly than has traditionally been the case under state law. In *Kernan v. American Dredging Co.*, 355 U.S. 426, 433, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), the Court, noting that "it is clear that the general congressional intent [in FELA] was to provide liberal recovery for injured workers," said "in FELA cases based upon violations of [statutory duties], the Court has held that a violation of [the] statute creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, *without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.*" *Id.* at 432–433 (emphasis added) (footnote omitted).

The RWPR was promulgated under § 8 of the Rail Safety Enforcement and Review Act, 49 U.S.C. § 20142, and the text of 49 C.F.R. § 214.301 indicates that the purpose of the regulations is to prevent accidents caused by moving trains or machinery striking workers. In resting its conclusion about the RWPR's inapplicability on this language and stated purpose, the district court implicitly applied the very common-law formulation of negligence *per se* that the Supreme Court rejected in *Kernan.* It reasoned that the RWPR "is not relevant in this case ... because those regulations were adopted to

prevent accidents caused by moving railroad cars, locomotives and railroad maintenance machines striking persons[,] ... and there is no evidence that ... moving railroad cars had anything to do with this accident or injuries." That analysis ignores the Supreme Court's holding that "a violation of [the] statute creates liability under FELA if [it] contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan*, 335 U.S. at 433.

Finally, even if violations of the RWPR were therefore relevant to the plaintiff's case of negligence on a theory of negligence *per se,* there remains the requirement that the plaintiff establish a sufficient causal connection between the violations and the injury. Here, too, however, the standard under the FELA is relaxed. As the Supreme Court held in *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969), the plaintiff is "not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act." (quoting 45 U.S.C. § 51).

Based on this framework, the testimony about the RWPR presented in the plaintiff's case was relevant and appropriate. It is clear that an employee stumbling and falling near the railroad tracks is not the type of injury that the RWPR sought to prevent. However, it is equally clear that the jury could have inferred that the defendant's violation of the "lone worker" rules contributed "in whole or in part" to the plaintiff's injury. *Crane*, 395 U.S. at 166.

This is also true of the evidence put forth by the plaintiff about the defendant's violations of the RPWR's training provisions. The plaintiff offered testimony indi-

cating that the defendant had failed adequately to train and qualify the plaintiff and his supervisors, and that as a result, neither plaintiff nor those who ordered him to clear the tree prior to his injury were fully aware of the RWPR requirements. These shortcomings were a violation of several RPWR regulations, including § 214.309, § 214.311, § 214.315, § 214.343, and especially § 214.347 ("Training and qualification for lone workers").

The jury easily could have concluded that these violations contributed in part to the plaintiff's injury: If the plaintiff's supervisor had been aware that the plaintiff was not qualified as a lone worker, the plaintiff would presumably not have been dispatched on the night of April 2, 1997. Similarly, if the plaintiff had known of the regulations, he might have demanded that he be accompanied.

We conclude that the district court erred in removing the plaintiff's testimony about the defendant's RWPR violations from consideration by the jury. This conclusion requires us also to conclude that it was not an abuse of discretion for the district court to allow the jury to be exposed to such evidence. We therefore affirm the court's denial of the defendant's motion for a new trial.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.